PEOPLE EXPRESS AIRLINES, INC.; People Express, Inc.; Donald C. Burr; William R. Hambrecht; John H. McArthur; Charles G. Phillips; David F. Thomas; Larry R. Martin; Robert A. Schwed, Plaintiffs,

v.

Mark W. ANDREW; Francine Appel; Milo H. Beck; Clifford L. Birdsinger; Joseph C. De Smit; Anthony Delcavo; Xavier Duran; Michael J. Faas; John Wallace Farrar; John K. Flemming, Jr.; Raymond Foster; Kenneth J. Gieck; Buddy A. Gray; Ray Hall; William S. Hamlin; David Heil; Lewis T. Hill; Deanna D. Hinkle; Harold W. Hopkins; D.D. Houdeshell; Norman J. Hutchinson; Gregory T. Islas; William G. Jones; Larry T. Kefalas; Michael L. Kellam; Nelleke Keller; Arthur Key; Ralph E. Klint; Jim Laekeke; Art Lewis; John C. Lyons; Charles W. McGinnis; Anthony T. McNosky; Edward L. Mondt; E. Gale Moss; James O. Patterson; Gary Pinson; Herb Red Cloud; A. Dean Rood; Rickey H. Rutt; K.L. Segebartt; Robert Seiberg; E. Dale Shepard; Jon D. Sluder; Gregory B. Smith; Louis F. Solignani; John Strickland; Nancy L. Sybert Casperson; John T. Teiber; Rusty Tomita; Larry Trudo; Gordon I. Wagner; Lawrence E. Weeks; Perry West; Harold R. Wheeler; William D. Whittaker and Earl W. Williams; and Air Line Pilots Association, International; and Air Line Employees Association International, Defendants.

Civ. A. No. 87–C–1806.

United States District Court, D. Colorado.

June 6, 1988.

Norman D. Haglund, Kelly, Haglund, Garnsey & Kahn, Denver, Colo., Ronald B. Natalie, Stuart F. Pierson, Dean R. Brenner, Verner, Liipfert, Bernhard, McPherson and Hand, Chartered, Washington, D.C., Lenard M. Parkins, Keith D. Spickelmier, Sheinfeld, Maley & Kay, Houston, Tex., for plaintiffs.

David W. Furgason, Gregory A. Ruegsegger, Welborn, Dufford, Brown & Tooley, Denver, Colo., Jonathan A. Cohen, Legal Dept., Washington, D.C., for Air Line Pilots Ass'n, Intern.

Robert A. Zupkus, Zupkus & Ayd, P.C., Denver, Colo., Robert H. Nichols, George W. Terrell, Jr., Cotton, Watt, Jones & King, Chicago, Ill., for Air Line Employees Ass'n Intern.

Denis H. Mark, Waller, Mark & Allen, Denver, Colo., for individual defendants Mark W. Andrew, et al.

## ORDER

CARRIGAN, District Judge.

This is one of several case arising out of Frontier Airlines, Inc.'s ("Frontier") financial decline. Frontier ceased its airline operations on August 24, 1986, and four days later filed a Chapter 11 voluntary petition

in the United States Bankruptcy Court for the District of Colorado.

Plaintiffs are People Express Airlines, Inc. ("PEA"), People Express, Inc. ("PEI"), and various former directors and officers of PEA, PEI and Frontier. They commenced this action on December 1, 1987, by filing a complaint for declaratory judgment and other relief ("declaratory relief complaint") pursuant to 28 U.S.C. § 2201. Jurisdiction is alleged to exist under 28 U.S.C. §§ 1331, 1337, and 2201.

The individual defendants in this action were Frontier pilots or station agents prior to Frontier's August 24, 1986, cessation of airline service. They are the plaintiffs in *Andrew, et al. v. People Express Airlines, Inc., et al.* ("state court case"), a case that was filed on July 2, 1987, in the state District Court in and for the City and County of Denver but subsequently removed to the United States Bankruptcy Court for the District of Colorado. Except for PEI, all of the plaintiffs in this action are defendants in the state court case.

In petitioning for removal, the state court defendants argued that the state court action was "related" to Frontier's bankruptcy proceedings under 28 U.S.C. § 1334. The individual defendants filed a motion for remand. On September 28, 1988, the bankruptcy court issued a Report and Recommendation Pursuant to Bankruptcy Rules 5011 and 9027(e). In that report the bankruptcy court recommended that the action be remanded on the ground that it involved claims personal to the state court plaintiffs, and therefore was not "related" to Frontier's bankruptcy proceedings within the meaning of 28 U.S.C. § 1334. By order dated March 11, 1988, I adopted the bankruptcy court's recommendation, and entered an order remanding the action to state court.

The union defendants in the present action for declaratory relief are the Air Line Pilots Association International ("ALPA"), and the Air Line Employees Association, International ("ALEA"). According to the complaint, these unions were at all relevant times the duly authorized, recognized and exclusive representatives of all the individual defendants in accordance with the provisions of the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*

Currently pending is the individual defendants' motion to dismiss this declaratory relief action. Additionally, the defendants ALPA and ALEA have each filed a motion to defer its obligation to answer the declaratory relief complaint unless and until the individual defendants' motion to dismiss is denied. The parties have briefed the issues and oral argument would not materially assist my decision.

The declaratory relief complaint alleges these facts: In October 1985, PEI negotiated the purchase of Frontier. Under the terms of the purchase agreement, Frontier was to become a wholly owned subsidiary of PEI. In order to facilitate PEI's purchase of Frontier, PEI, Frontier and Frontier Holdings, on October 17, 1985, entered into an agreement ("Amendment") with the defendants ALEA and ALPA, as well as the other Frontier unions. The Amendment purportedly amended and superseded the existing collective bargaining agreements between Frontier and the Frontier unions.

According to the declaratory relief complaint, the Amendment provided that following its purchase of Frontier, PEI would honor and be bound by the collective bargaining agreements that it had entered into with the respective unions, as modified by the Amendment. It adds that "Frontier agreed to be bound by its collective bargaining agreements with ALPA and ALEA, which agreements set the rates of pay, work rules and working conditions of the [individual] defendants, as modified by the Amendment." (Declaratory relief complaint, ¶ 20.) Additionally, assuming Frontier's continued operation, "Frontier agreed not to furlough Frontier employees covered by the Amendment." (*Id.*) Plaintiffs contend that by establishing rates of pay, work rules and working conditions of Frontier's employees, the Amendment was entered into under, and is subject to interpretation under, the RLA, 45 U.S.C. §§ 181, 184.

On November 22, 1985, PEI consummated its purchase of Frontier. However, Frontier continued to experience severe financial difficulties after the purchase. As mentioned, *supra*, Frontier ceased airline operations on August 24, 1986, and filed its Chapter 11 bankruptcy petition four days later.

On October 15, 1986, PEI, in order to facilitate the prompt creation of job opportunities for those Frontier employees who desired to join Continental Airlines, Inc., and to bring about the reinstitution of airline service with Frontier's assets, PEI (for itself and PEA), Continental, Frontier and Frontier Holdings, entered into an agreement referred to as the Job Preservation and Litigation Settlement Agreement ("JPA") with the Frontier unions.

Plaintiffs in this declaratory relief action allege that the JPA terminated the 1985 Amendment and the underlying collective bargaining agreements. They specifically assert that:

> "[P]aragraph 15 of the JPA provides that the Frontier unions waive and forever release any and all claims of any nature arising on behalf of the Frontier employees they represent, including the individual defendants herein, against, *inter alia*, PEI, PEA as a subsidiary of PEI, and their officers and directors. All rights, claims and grievances under the underlying collective bargaining agreements were released and withdrawn with prejudice, except for certain bankruptcy claims and grievances not relevant to this [declaratory relief] Complaint." (Declaratory relief complaint, ¶ 24.)

The declaratory relief complaint alleges that the JPA presented employees with two options: (1) a job offer from Continental; or (2) termination with severance pay. It further alleges that: "On information and belief, the individual defendants have failed or refused to elect either of these options." (*Id.* ¶ 26.) The JPA was ratified by the memberships of both ALPA and ALEA, and approved by the United States Bankruptcy Court on October 17, 1986. (*Id.* ¶ 27.)

Before addressing the individual defendants' motion to dismiss this action, a brief discussion of their state court action is necessary. As mentioned, *supra*, that action was removed to, and then remanded from, the United States Bankruptcy Court for the District of Colorado. Moreover, as previously mentioned, except for PEI, all of the plaintiffs in this declaratory relief action are defendants in the state court case.

According to the state court complaint, the Frontier employees, in an effort to save their jobs, tried to purchase the airline prior to Frontier's bankruptcy. In the interim, PEA purchased Frontier. The state court plaintiffs allege that in effecting the purchase, PEA entered into the October 1985, Amendment with Frontier and the employees whereby PEA agreed to keep Frontier operating and to maintain the employees' jobs. The state court plaintiffs further allege that as a result of the Amendment, they became "creditors of Frontier." They assert that after PEA purchased Frontier, it: (1) utilized its position to extract significant sums of money from Frontier; (2) breached its obligations to maintain Frontier as an operating company; and (3) proceeded to sell Frontier's assets to United Airlines.

The state court complaint alleges the following state law claims for relief: (1) breach of duties as trustees; (2) violation of the Colorado Corporation Code, Colo. Rev.Stat. §§ 7–8–105 and 7–5–114; (3) alter ego liability; (4) breach of contract; (5) breach of guarantee; (6) breach of fiduciary duties; (7) negligence; (8) tortious interference with contract; (9) violation of the Colorado Organized Crime Control Act, Colo.Rev.Stat. § 18–17–104; and (10) outrageous conduct. No federal law claims are alleged in the state court complaint.

In the present action for declaratory relief, the plaintiffs contend that in filing the state court action, the individual defendants have violated their release of claims under the JPA. According to the plaintiffs, the individual defendants' release was fully and irretrievably given on their behalf by their duly elected, authorized, and exclusive collective bargaining representatives.

Plaintiffs here assert that joinder of the union defendants in this declaratory relief action was necessary for the court to grant fully effective relief. They also argue that the JPA extinguished all claims raised by the plaintiffs in their state court action, and that "[b]ecause this case addresses the binding effect of an agreement executed by representatives under the RLA, it presents for decision issues of federal labor law over which this Court has exclusive jurisdiction." (Declaratory relief complaint, ¶ 32.)

The declaratory relief complaint prays for judgment declaring:

(1) that the releases granted by ALPA and ALEA in favor of the plaintiffs in the JPA extinguished, waived and released all rights, claims or causes of actions whatsoever that Frontier pilots and station agents may have had against the plaintiffs;

(2) that the Frontier unions were the duly authorized, recognized and exclusive representatives of Frontier employees, including the individual defendants, when the unions entered into the Amendment and the JPA; and

(3) that as against the plaintiffs, the Frontier employees did not retain any rights, claims or causes of action.

Plaintiffs also request that the individual defendants be enjoined from asserting: (1) any claims under Frontier collective bargaining agreements, the Amendment to those agreements, or the JPA, against PEI, PEA, their successors or assigns, or the individual plaintiffs; and (2) any claims of any nature whatsoever against the plaintiffs arising prior to the JPA. Additionally, the plaintiffs request that the state court action be dismissed with prejudice.

In their motion to dismiss, the individual defendants argue that dismissal of this declaratory relief action is proper because "the issues which are the subject of the requested declaratory judgment are defenses properly available to People and the Directors in the pending State Court case." (Motion, at 3.)

Plaintiffs respond by contending that their dispute with the individual defendants should be resolved by a federal court because it turns on a question of federal labor law, namely: Whether the defendant unions lawfully waived their members' individual claims that were subject to bargaining under the RLA. Plaintiffs assert that the individual defendants have attempted "by artful pleading to cast what are essentially federal labor claims as common-law torts or state statutory claims." (Opposition brief, at 3.)

■ Section 2201, 28 U.S.C., provides that in "a case of actual controversy within its jurisdiction" a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." The granting or denial of a declaratory judgment rests in the sound discretion of the court. *Grand Trunk Western R.R. v. Consolidated Rail Corp.*, 746 F.2d 323 (6th Cir.1984).

■ Two principal criteria are to be applied in considering whether to grant a declaratory judgment: (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue; and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. It follows that when neither of these results can be accomplished, the court should decline to render the declaration prayed. *Id.* at 326 (*citing* E. Borchard, *Declaratory Judgments* at 299 (2d ed. 1941)).

In *Grand Trunk, supra,* the Sixth Circuit considered the following factors in determining whether to issue a declaratory judgment:

"(1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata'; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction;

and (5) whether there is an alternative remedy which is better or more effective."

It is undisputed that the present action for declaratory relief involves at least some issues previously raised and still pending in the state court litigation. The pendency of another action involving the same set of circumstances often has been of determinative importance in the exercise of judicial discretion. 6A *Moore's Federal Practice*, ¶ 57.08[6.–1], at 57–53. However, while courts have strongly discouraged the maintenance of separate actions involving the same issues, "[i]t seems well settled that the mere pendency of another action involving the same set of facts does not in and of itself preclude the exercise of the declaratory jurisdiction." *Id.* at 57–54.

"Where a declaratory action presents issues which would necessarily be settled by another pending state or federal action, the court should weigh the relative merits of each of the two actions *as of the time of the hearing on the motion to dismiss.*" *Moore's supra,* ¶ 57.08[6.–1], at 57–60 (emphasis in original; *citing American Home Assurance Co. v. Insular Underwriters Corp.,* 494 F.2d 317 (1st Cir.1974). Clearly, at least some issues presented by the declaratory relief complaint would necessarily be settled in the pending state court action. Therefore, I must at this stage of the proceedings weigh the relative merits of each of the two actions.

I initially note that the state court action was commenced approximately five months before this action for declaratory relief was filed. However, that fact alone is not determinative in deciding whether to dismiss this declaratory relief action. As observed by one commentator:

"The accident of commencement date should not control over the more practical and realistic factors of convenience of court, witnesses, and parties; the comparative condition of the dockets and, therefore, the relative ability of the two courts to provide a quick determination of the issues; the certainty of jurisdiction; and the possibility that a *prior* determination of the issue raised in the declaratory action might be of great convenience in a subsequent trial of the action." *Moore's, supra,* at 57–60 (footnotes omitted).

Nevertheless, § 2201 should not be used to facilitate procedural fencing, or to provide an arena for a race to res judicata. *Id.* at 57–39. Although a court should not deny declaratory relief simply because another remedy is available, it may properly refuse to exercise its jurisdiction if the alternative remedy is better or more effective. *Id.* at 57–40.

In the present case, the state court complaint alleges only state law claims for relief. Despite this fact, the declaratory relief plaintiffs contend that their dispute with the individual defendants should proceed in federal court because federal labor law supplies them a complete defense to the state court claims. More specifically, the plaintiffs assert that federal labor law preempts the individual defendants' state court claims.

Under the preemption doctrine, as it applies to labor disputes, state courts (and federal courts applying state law) generally may not apply state law to conduct protected or prohibited by federal labor law. *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 244–45, 79 S.Ct. 773, 779–80, 3 L.Ed.2d 775 (1959). Preemption is more comprehensive under the RLA than it is under the National Labor Relations Act, 29 U.S.C. §§ 151 *et seq. Peterson v. ALPA,* 759 F.2d 1161, 1169 (4th Cir. 1985), *cert. denied,* 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985). In fact, the scheme of remedies and procedures "carefully crafted in the RLA has long been interpreted as evidence of Congressional intent significantly to limit an aggrieved employee's right to resort to state law...." *Id.*

Plaintiffs in the instant action argue that preemption bars the individual defendants' claims because "[w]here the employment relationship between an RLA carrier and its employees is concerned, the RLA preempts state law." (Supplemental memorandum, at 8.)

■ Nevertheless, I need not determine whether the RLA preempts the state law claims because even if it does, the state court is a proper forum in which to raise the defense of federal preemption. *People of the State of California v. Glendale Fed. Sav. & Loan Assoc.*, 475 F.Supp. 728, 733 (C.D.Cal.1979).[1]

■ Plaintiffs next assert that this court should resolve their dispute with the individual defendants because the union defendants are not parties to the state court action. More specifically, the plaintiffs insist that:

> "The union defendants are critical to comprehensive determination of the validity of the waiver [allegedly effected by the JPA]. It was they who negotiated the JPA on behalf of the employees as their authorized, recognized and exclusive collective bargaining representatives.... This case presents the Court with the full set of parties and a ripe controversy where resolution will efficiently dispose of many pending claims." (*Id.*)

While the plaintiffs place great emphasis on the fact that the union defendants are not parties to the state court action, the plaintiffs have not informed this court whether they have attempted to join the union defendants in the state court case, or their reasons for not attempting joinder. Moreover, the state court is fully capable of determining whether the union defendants are indispensable to that court's rendering of complete and final justice.

While it might well be desirable to have a federal court assume jurisdiction over a state court case whenever a dispositive issue may be controlled by federal law, such desirability must be balanced against the continually increasing caseload of the federal courts and the concomitantly increasing competence of the state courts to decide federal issues. *Glendale, supra,* 475 F.Supp. at 732. In the present case, the balance weighs heavily in favor of the state court exercising its jurisdiction because the Colorado state court system is one of the finest and most efficient state court systems in the nation, and the federal district courts in Colorado have long suffered from a critical shortage of judges. There can be little question that the claims pending in this case can be more quickly resolved by the Colorado state court where the litigation is already well under way.

For the reasons discussed above, I conclude, under my discretionary authority, that the individual defendants' motion to dismiss should be granted.

Accordingly, IT IS ORDERED that:

(1) The individual defendants' motion to dismiss is granted;

(2) The declaratory judgment complaint and this action are dismissed with respect to the individual defendants; and

(3) Defendant Air Line Pilot Association's Motion for Deferral of Obligation to Answer or Otherwise Move is denied as moot;

---

1. Although I do not reach the issue, I note that several courts have held that a defense of federal preemption is alone insufficient to create federal subject matter jurisdiction. *See, e.g., Home Fed. Sav. & Loan Assoc. v. Insurance Dep't of Iowa,* 571 F.2d 423, 427 (8th Cir.1978) (because allegation of federal preemption is in the nature of a defense, "it will not suffice for federal question jurisdiction"); *State of Washington v. American League of Professional Baseball Clubs,* 460 F.2d 654, 660 (9th Cir.1972) ("[f]ederal preemption is a matter of defense to a state law claim, and not a ground for removal"); *See also Glendale Fed., supra,* 475 F.Supp. at 731 ("[t]he great majority of courts that have addressed the issue have held that ... the defense of federal preemption does not create federal jurisdiction"); *but see Rettig v. Arlington*

*Heights Fed. Sav. & Loan Assoc.,* 405 F.Supp. 819 (N.D.Ill.1975) (federal preemption creates removal jurisdiction); *cf. Avco Corp. v. Aero Lodge No. 735,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968) (a claim under a collective bargaining agreement is "one arising under the laws of the United States").

If federal preemption does not create federal jurisdiction, then conceivably the plaintiffs could not have removed the state court action to this court under 28 U.S.C. § 1441. This fact is relevant to a motion to dismiss a declaratory relief action because § 2201 may not be used to perform an end-run around § 1441. *Shell Oil Co. v. Frusetta,* 290 F.2d 689 (9th Cir.1961); *Thompson v. Moore,* 109 F.2d 372, 374 (8th Cir.1940); *American Automobile Insurance Co. v. Freundt,* 103 F.2d 613, 617 (7th Cir.1939).

(4) Defendant Air Line Employees Association's Motion To Defer Requirement that it File a Responsive Pleading Unless and Until Pending Motion to Dismiss is Denied by the Court is denied as moot; and

(5) Defendants Air Line Pilots Association and Air Line Employees Association shall respond to the declaratory judgment complaint within 11 days.