Abraham POLGER, Donald S. Oberfeld, Marby Financial, Inc., a Colorado corporation, H.B. Kent, Inc., a Florida corporation, R.C. Kent, Inc., a Florida corporation, and A. & D.P.W. Limited Partnership, a Colorado partnership, Plaintiffs,

v.

REPUBLIC NATIONAL BANK, a national association, and Frederick W. Lawrence, Defendants.

Civ. A. No. 88–C–295.

United States District Court, D. Colorado.

March 2, 1989.

---

Peter R. Bornstein, Berenbaum & Weinshienk, P.C., Denver, Colo., for plaintiffs.

Robert W. Smith and Martin H. Shore, Hellerstein, Hellerstein and Shore, P.C., Denver, Colo., for defendant Republic Nat. Bank.

Martha J. Ridgway and Barry K. Arrington, Krendl & Krendl, P.C., Denver, Colo., for defendant Lawrence.

## ORDER

CARRIGAN, District Judge.

Plaintiffs commenced this action seeking to recover at least a portion of their expenses incurred in the cleanup of hazardous material situated at a certain parcel of property that is located at 1252 West Radcliff Avenue, in Englewood, Colorado. Jurisdiction is alleged to exist pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9613.

Plaintiffs allege that on January 16, 1986, the Colorado Department of Health ("CDOH") issued a compliance order after determining that hazardous substances and hazardous wastes existed on the property.

The order demanded that a cleanup plan for disposal of all hazardous material be proposed by the individuals and entities named in the order, and that the plan be submitted for approval by the CDOH. The compliance order was sent to the plaintiffs and to the defendants Republic National Bank ("Republic National") and Frederick W. Lawrence. Plaintiffs allege that only they have responded to the compliance order. Plaintiffs further allege that they have obtained an approved plan for cleanup of the hazardous material, and have spent in excess of $60,000 to implement the plan.

Plaintiffs initially sought contribution from the defendants by filing a complaint in the state district court for Arapahoe County, Colorado. Defendants moved to dismiss that action, alleging, among other things, that: (1) the federal courts have exclusive jurisdiction over the plaintiffs' CERCLA and RCRA claims; and (2) the plaintiffs' negligence and nuisance claims fail to state a claim on which relief may be granted. The state district court granted the motion to dismiss without issuing a written opinion. Plaintiffs appealed that decision and then filed the action now pending in this court.

On April 4, 1988, the defendants separately filed motions to dismiss the complaint or, in the alternative, for a more definite statement. Defendant Lawrence additionally moved for sanctions against the plaintiffs, requesting an award of attorneys' fees. By minute order dated August 30, 1988, the plaintiffs were granted leave to file an amended complaint.

An amended complaint has been filed, rendering moot the defendants' motions to dismiss or, alternatively, for a more definite statement.

The amended complaint alleges the following: When the plaintiffs acquired ownership of the subject property, OWLL Corporation d/b/a Fab Circuits, Inc. was the tenant in possession under a five year lease. Defendant Lawrence was the OWLL Corporation's president and chief operating officer.

As part of its business, OWLL Corporation took out a loan from the defendant Republic National. The loan was subject to a security agreement in the debtor's accounts receivable, inventory, and equipment, as well as proceeds from any sale of those items.

In December 1985, OWLL Corporation became insolvent and ceased making rent payments to the plaintiffs. Additionally, all of OWLL Corporation's equipment and inventory was voluntarily surrendered to the defendant Republic National, which became the owner of the personal property. Republic National then entered the premises and took physical possession of all the personal property. The complaint alleges that by doing so, Republic National became the "owner and operator" of the OWLL plant facility, as that term is defined in 42 U.S.C. § 9601(20)(A).

The complaint further alleges that the personal property to which the bank became¹ the owner and possessor included hazardous substances as defined in CERCLA, 42 U.S.C. § 9601(14) and hazardous waste as defined in RCRA, 42 U.S.C. §§ 6901 et seq., and 40 C.F.R. § 261. Republic National then sold the personal property to L.P. Industries, Inc.

As discussed, supra, the plaintiffs allege that as a result of the hazardous material situated on the property, they have been forced to pay over $60,000 in response costs. Specifically, money has been expended for preparation of the cleanup plan and for cleanup of the hazardous material. The first claim for relief seeks contribution from each defendant for response costs pursuant to CERCLA, 42 U.S.C. § 9607(a).

The second claim for relief alleges that the defendant Republic National "negligently obtained and disposed of the collateral for its loan by failing to adequately supervise the removal of hazardous substances and otherwise dispose of hazardous waste so as to conform to the requirements" of CERCLA and RCRA, "and its state law counterparts found in Title 25, Articles 15 and 16 of the Colorado Revised Statutes." (¶ 25.) The second claim additionally alleges that the defendant Lawrence "negligently assisted the Republic National Bank in disposing of hazardous

substances and hazardous wastes and, further, negligently allowed the Plaintiffs' property to become contaminated." (¶ 26.)

The third claim for relief asserts that "[b]oth Defendants' actions constitute the creation of a common law nuisance and nuisance *per se* ('statutory environmental nuisance') for violation of state and federal environmental laws." (¶ 30.)

On September 9, 1988, the defendant Lawrence filed a Renewal and Supplement to Motion to Dismiss Complaint. Lawrence also renewed his alternative motion for a more definite statement, and his request for attorneys' fees. On September 12, 1988, the defendant Republic National submitted a "Response" to the amended complaint. On October 3, 1988, Republic National moved to amend the motion's caption to read: "Renewed and Supplemental Motion to Dismiss Complaint." The motion to amend the caption was granted.

Thus currently pending are: (1) the defendant Lawrence's renewed motion to dismiss; (2) the defendant Republic National's renewed motion to dismiss; (3) Lawrence's renewed motion for a more definite statement; and (4) Lawrence's renewed motion for attorneys' fees. The parties have briefed the issues and oral argument would not materially assist my decision.

In reviewing the sufficiency of a complaint when tested by a motion to dismiss, I must accept as true the complaint's allegations and view them in a light most favorable to the plaintiffs. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The complaint must stand unless it appears beyond doubt that the plaintiffs have alleged no set of facts that would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

While the defendants concede that the amended complaint eliminates some of the grounds that were identified in support of their motions to dismiss or, alternatively, for a more definite statement, they contend that the amended complaint should be dismissed for the following reasons: (1) the first claim for relief, which requests recovery of response costs under CERCLA, fails to allege that the plaintiffs are not personally liable for the costs and damages requested by them; (2) the second claim for relief, which alleges common law negligence, fails to allege that the defendants owed a legal duty to the plaintiffs, or that such a duty was breached; (3) the third claim for relief, which alleges common law nuisance and nuisance per se, fails to state a claim upon which relief may be granted; (4) there is no support for the allegation that the defendant Lawrence is personally liable for OWLL Corporation's negligence or nuisance; (5) pendent jurisdiction should not be exercised over the plaintiffs' state law claims for relief; and (6) because the allegations of the amended complaint are intertwined with those in the pending state appellate action, this court should abstain from considering this action.

For the reasons stated below I conclude that the first claim for relief should not be dismissed. In addition, I conclude that pendent jurisdiction should not be exercised over the second and third claims for relief. Accordingly, I need not address the other arguments propounded by the defendants for dismissal of those claims. I further conclude that I should not abstain from proceeding on the first claim for relief. Lawrence's renewed motion for a more definite statement is rendered moot by my decision regarding pendent jurisdiction, and Lawrence's motion for attorneys' fees will be denied.

1. *First Claim for Relief—CERCLA.*

■ Defendants contend that the plaintiffs' first claim for relief must be dismissed because the first amended complaint fails to allege that the plaintiffs are not themselves liable for the costs and damages requested by them. In support of this argument, the defendants rely on *D'Imperio v. United States*, 575 F.Supp. 248 (D.N.J.1983). There the plaintiffs were owners of property on which hazardous waste had been placed. Plaintiffs sought, among other things, a judgment declaring that: (1) they were not liable for any costs of cleaning up the site; and (2) any costs they incurred would be recoverable either from the Superfund, or other parties re-

sponsible for the environmental damage. The court held that the plaintiffs' request for a judgment declaring them not responsible for cleanup costs was not ripe for adjudication because the EPA had not yet referred the case to the Attorney General's office for action under CERCLA, 42 U.S.C. § 9607.

Additionally, the court in *D'Imperio* determined that the plaintiffs' request for a judgment declaring that either the Superfund or other parties were required to reimburse the plaintiffs for cleanup costs, was similarly premature. The court stated that "[i]n order to seek recovery under [§ 9607(a)(4)(B)], it is necessary for the plaintiff to prove that he himself is not liable for these costs." 575 F.Supp. at 253.

Plaintiffs respond to the defendants' reliance on *D'Imperio* by arguing that the *D'Imperio* case "is distinguishable from the one before this court." (Response, at 2.) However, the plaintiffs fail to explain why *D'Imperio* is distinguishable. To the contrary the *D'Imperio* court's intepretation of § 9607(a)(4)(B) appears applicable to the instant facts. However, I note that *D'Imperio* provided no reasoning to bolster its interpretation of § 9607(a)(4)(B).

Plaintiffs next contend that to the extent *D'Imperio* is applicable, "it is contrary to this Court's prior holding in the case of *State of Colorado v. Asarco, Inc.,* 608 F.Supp. 1484 (D.Colo.1985)," and that "the doctrine [the defendants] are pursuing is inimicable to the concept and theory of contribution." (Response, at 2.)

In *Asarco,* I held that a mine owner who was held to be jointly and severally liable with a mining company under § 9607 could be subjected to a claim for contribution asserted by the mining company. 608 F.Supp. at 1492. The clear implication of this holding is that a party legally responsible for response costs under CERCLA § 9607 can seek compensation from other parties who are also legally responsible under § 9607.

This position is supported by *City of Philadelphia v. Stepan Chemical Co.,* 544 F.Supp. 1135 (E.D.Pa.1982). There the plaintiff City of Philadelphia, which owned a landfill where hazardous waste had been dumped, filed a CERCLA action against the chemical company that allegedly had dumped the waste, to recover the City's response costs in cleaning up the landfill. The chemical company asserted that the City could not recover response costs under CERCLA because the City itself conceivably might be liable to federal or state governments for the cleanup. The court rejected this argument. It acknowledged that § 9607 neither specifically denies nor authorizes recovery of response costs by parties potentially liable for the cleanup of an area, but nevertheless concluded that the chemical company's position "cuts directly against CERCLA's objectives and the environmental concerns which prompted its enactment." *Id.* at 1142.

The court reasoned:

"[I]t is clear from the discussions which preceded the passage of CERCLA that the statute is designed to achieve one key objective—to facilitate the prompt clean up of hazardous dumpsites by providing a means of financing both governmental and private responses and by placing the ultimate financial burden upon those responsible for the danger. The liability provision is an integral part of the statute's method of achieving this goal for it gives a private party the right to recover its response costs from responsible third parties which it may choose to pursue rather than claiming against the fund.

"Viewing the statute in this context, I cannot attribute to Congress an intention to preclude the City from maintaining a CERCLA action in this case. While the City is admittedly the owner of the Enterprise site, and might have been liable to the federal or state governments had those entities commenced the cleanup, the dispositive consideration is that the City did not operate a hazardous waste disposal facility on the premises and it asserts that it did not voluntarily permit the placement of the hazardous substances on its property. Moreover, it has undertaken to clean up the ensuing damage and now seeks to recover its re-

sponse costs from parties which were allegedly involved in the illegal dumping and which are made expressly liable for response costs. I cannot conclude that the City's right to maintain this action is barred by the hypothetical possibility that had the federal or state government brought this suit, the City too would be liable." 544 F.Supp. at 1142–43.

I find the above-quoted reasoning of the court in *Stepan Chemical* to be both persuasive and applicable here. As in *Stepan Chemical*, the dispositive consideration here, taking the amended complaint's allegations as true, is that the plaintiffs neither operated a hazardous waste disposal facility on their property, nor voluntarily permitted the placement of hazardous substances there. Additionally, they have undertaken to clean up the hazardous waste, and now seek to recover their response costs from parties who allegedly were involved in the creation of hazardous waste and who are expressly liable under CERCLA for response costs.

Moreover, requiring property owners to prove that they are not themselves liable under CERCLA's strict liability provisions before they can seek contribution from other responsible parties might easily deter expedient cleanup of waste sites. If such owners believe that they will not be allowed to recover from others who actually generated or dumped the waste, they may decide to ignore a hazardous waste site in the hope that federal or state authorities will either not discover the waste, or will be unsuccessful in pinning liability on them. Furthermore, a contrary result would defeat CERCLA's purpose of placing the ultimate financial burden upon those actually responsible for creating the problem.

Accordingly, I conclude that the first claim for relief should not be dismissed as a result of the plaintiffs' failure to allege that they themselves are not liable for the cost of cleaning up the contaminated property.

### 2. *Second and Third Claims for Relief—State Law.*

■ Plaintiffs request that I exercise pendent jurisdiction over their second and third claims for relief. As mentioned, *supra,* the second claim alleges that the defendants were negligent with respect to the generation or removal of hazardous wastes on the property at issue, and the third claim asserts that the defendants are liable for common law nuisance and nuisance per se. Under the doctrine of pendent jurisdiction, a federal court has discretion in the interests of "judicial economy, convenience and fairness to the litigants" to try all of a plaintiff's claims in one proceeding. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). In order for a court to exercise pendent jurisdiction over a state claim, the federal claim must be substantial and the federal and state claims "must derive from a common nucleus of operative fact," and be so related that a party would normally be expected to try them all in one judicial proceeding. *Id.* at 725, 86 S.Ct. at 1138.

■ Additionally, once a finding is made that a federal statute confers subject matter jurisdiction over a claim for relief, the statute must be examined to determine if it expressly or impliedly proscribes the exercise of pendent jurisdiction over the plaintiffs' state law claims. *Owen Equipment and Erection Co. v. Kroger,* 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978). Moreover, whenever "it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." *Id.* 383 U.S. at 726–27, 86 S.Ct. at 1139.

■ Defendants do not assert that the plaintiffs' state law claims fail to arise out of a common nucleus of operative fact with the CERCLA claim. Nor do the defendants suggest that the plaintiffs would not normally be expected to try all their claims in one judicial proceeding. Rather, the defendants contend that pendent jurisdiction should not be exercised over the plaintiffs' state law claims for relief because (1) CERCLA implicitly proscribes the exercise of pendent jurisdiction in a CERCLA case;

and (2) the plaintiffs' state law claims predominate over their CERCLA claim.

In support of these two contentions, the defendants rely on *Adams v. Republic Steel Corp.*, 621 F.Supp. 370 (W.D.Tenn. 1985), and *Wehner v. Syntex Corp.*, 622 F.Supp. 302 (E.D.Mo.1983). In *Adams*, the plaintiffs sued corporations that allegedly owned and operated a steel manufacturing plant that emitted toxic chemicals, alleging claims for violation of the Tennessee Air Quality Act, Tenn.Code Ann. § 68–25–101 *et seq.*, the Clean Air Act, 42 U.S.C. § 7401 *et seq.*, the Toxic Substances Control Act, 15 U.S.C. § 2601 *et seq.*, and CERCLA, in addition to state law claims for negligence, nuisance, trespass, strict liability, assault and battery, and intentional infliction of emotional distress. Defendants moved to dismiss the state law claims for lack of subject matter jurisdiction on two grounds that (1) diversity of citizenship was lacking, and (2) that federal question jurisdiction did not exist. The court first determined that diversity jurisdiction had not been alleged adequately, and then held that neither the Clean Air Act nor the Toxic Substances Control Act provides a claim for relief for compensatory damages, and therefore neither conferred federal question jurisdiction. However, the court concluded that subject matter jurisdiction existed under 28 U.S.C. § 1331 with respect to the plaintiffs' claim under CERCLA.

Nevertheless, the court refused to exercise pendent jurisdiction over the plaintiffs' state law claims because it found that "the state claims for damages predominat[ed] over any claim presented under the CERCLA." 621 F.Supp. at 377. The court added that "because private actions for damages other than response costs are not available under CERCLA ... it appears that pendent jurisdiction over a state claim for tort damages is implicitly negated by CERCLA." *Id.* (*citing Stepan Chemical, supra,* 544 F.Supp. 1135).

In *Wehner v. Syntex Corp.*, 622 F.Supp. 302 (E.D.Mo.1983), the plaintiffs sued several chemical companies, alleging that the companies were responsible for the improper disposal of dioxin. Plaintiffs sought recovery of response costs under CERCLA, in addition to damages and injunctive relief pursuant to state law claims. Plaintiffs initially alleged subject matter jurisdiction based on diversity, but later conceded that complete diversity did not exist. Plaintiffs then requested that the court exercise pendent jurisdiction over their state law claims. In denying the plaintiffs' request, the court stated:

"The liability under 42 U.S.C. § 9607 for response costs ... is limited and far different from the type of liability plaintiffs seek to impose upon defendants under their state law claims. The plaintiffs' complaint asserts nine different Missouri state law cases [sic] of action and involves many complex issues of state law. The legal and factual questions on these state law causes of action clearly substantially predominate the limited issues raised under the CERCLA claim." 622 F.Supp. at 304.

In the present case, as in *Adams* and *Wehner*, the liability under CERCLA for response costs is limited and very different from the type of liability the plaintiffs seek to impose upon the defendants with their state law claims. While CERCLA provides for strict liability, it does not authorize recovery of consequential or punitive damages. In contrast, the plaintiffs' state law claims are traditional tort claims for which liability must be established, and for which consequential and punitive damages may be recoverable. Although the CERCLA and state law claims arise out of the same or closely related facts, the nature of the proof involved for the claims is vastly different. Indeed, the state law claims would require much more extensive evidence at trial than the CERCLA claim. Thus the state law claims here predominate over the CERCLA claim. Accordingly, I conclude that pendent jurisdiction should not be exercised over the second and third claims for relief.

### 3. *Abstention.*

■ Defendants argue that I should abstain from exercising jurisdiction over this case because the plaintiffs, after originally filing this action in state court, should not

be permitted to expand their litigation in this forum. Rather, the defendants argue, the plaintiffs should be content to pursue their appeal of the state court's dismissal of their action. In support of this contention, the defendants rely on *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed. 2d 669 (1971); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), and this court's opinion in *People Express Airlines, Inc. v. Andrew, et al.,* 86 B.R. 644 (D.Colo.1988).

In *Younger* the plaintiff sued in federal court to enjoin a state prosecution against him under an allegedly unconstitutional state criminal statute. A three-judge federal court, holding the state law unconstitutionally vague and overbroad, enjoined the prosecution. The Supreme Court reversed, reasoning that federal courts should not enjoin pending state criminal prosecutions except under extraordinary circumstances where the danger of irreparable loss is both great and immediate, and that such circumstances were not present.

The holding of *Younger* was applied in *Huffman* to a civil proceeding filed in federal court challenging a state's civil obscenity statute. A state court judgment had been entered against the federal court plaintiffs in a civil proceeding instigated by the state, ordering closure of the plaintiffs' movie theater. The federal district court declared the statute unconstitutional and enjoined execution of the state court's judgment. The Supreme Court reversed, reasoning that the district court erred in not considering the abstention principles of *Younger* in reaching its decision. The Court stated that "[t]he component of *Younger* which rests upon the threat to our federal system is thus applicable to a civil proceeding such as this quite as much as it is to a criminal proceeding." 420 U.S. at 604, 95 S.Ct. at 1208. The Court additionally acknowledged that the case involved a state proceeding "which in important respects is more akin to a criminal prosecution than are most civil cases." *Id.* The Court explained that although the district court's injunction "has not directly disrupted Ohio's criminal justice system, it has disrupted that State's efforts to protect the very interests which underlie its criminal laws and to obtain compliance with precisely the standards which are embodied in its criminal laws." *Id.* at 604–05, 95 S.Ct. at 1208.

*People Express, supra,* involved a labor dispute between People Express Airlines and some of its employees. Prior to the airline's filing a declaratory relief action in federal court, the employees had filed an action in state court involving essentially the same issues. I granted the individual defendants' motion to dismiss the declaratory relief action, reasoning that the state court was the better forum for the plaintiffs' action despite the fact that federal law controlled a question of labor law at issue in the case. In reaching my conclusion, I observed that while it might be desirable to have a federal court assume jurisdiction over a state court case whenever a dispositive issue may be controlled by federal law, "such desirability must be balanced against the continually increasing caseload of the federal courts and the concomitantly increasing competence of the state courts to decide federal issues." At 650.

*People Express* clearly is distinguishable from the present case. There the state court had jurisdiction over the federal law claim. In contrast, the defendants here were successful in persuading the state court that it lacked jurisdiction to hear the plaintiffs' federal claims. Significantly, the state court action in *People Express* was still pending in the state district court when the federal action was dismissed.

The instant action also is distinguishable from *Younger* and *Huffman.* Both of those cases involved a federal court enjoining a state court's enforcement of state law. In contrast, the plaintiffs here seek to enforce a federal statute in federal court; the plaintiffs are not challenging the constitutionality of a state statute. Thus those cases clearly are inapposite.

### 4. *Lawrence's Renewed Motion for Attorneys' Fees.*

■ Defendant Lawrence contends that pursuant to 28 U.S.C. § 1927, the plaintiffs should be required to pay his attorneys' fees "incurred to date because he has been

forced to respond to complaints both in the state and federal courts which Plaintiffs should have known were defective." (Renewed motion, at 3.)

I conclude that the plaintiffs did not act unreasonably, vexatiously, or frivolously by filing this action. Accordingly, the defendant Lawrence's motion for attorneys' fees is denied.[1]

For the reasons stated above, IT IS ORDERED that:

(1) Defendant Frederick W. Lawrence's renewed motion to dismiss is granted in part and denied in part;

(2) Defendant Republic National Bank's renewed motion to dismiss is granted in part and denied in part;

(3) The amended complaint's second and third claims for relief are dismissed without prejudice;

(4) Defendant Frederick W. Lawrence's renewed motion for a more definite statement is denied as moot;

(5) Defendant Frederick W. Lawrence's renewed motion for attorneys' fees is denied; and

(6) Defendants Republic National Bank and Frederick W. Lawrence shall file an answer to the amended complaint within 11 days of the date of this order.

---

**1.** Rule 11, Fed.R.Civ.P., imposes an affirmative duty on judges to enforce sanctions when that Rule has been violated. *Chevron, U.S.A., Inc. v. Hand,* 763 F.2d 1184, 1187 (10th Cir.1985). Rule 11 states in pertinent part:

"The signature of an attorney or party [on a pleading] constitutes a certificate by the signer that ... to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and that it is not interposed for any improper purpose...."

Although discretion to impose sanctions under Rule 11 should be exercised with care, courts have a duty to apply sanctions in appropriate cases.

An additional deterrent against abuse of the judicial process is found in 28 U.S.C. § 1927. That section provides:

"Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

Three substantial requirements must be met before liability may be imposed under § 1927: (1) a multiplication of proceedings by an attorney or other person; (2) by conduct that can be characterized as unreasonable and vexatious; and (3) a resulting increase in the cost of the proceedings. *Campana v. Muir,* 615 F.Supp. 871, 894 (M.D.Pa.1985), *aff'd,* 786 F.2d 188 (3rd Cir.1986).