William H. MATHEWS; and Vintage Sales, L.L.C., Plaintiffs,

v.

DOW CHEMICAL COMPANY, a Delaware corporation; Parks Corporation, a Massachusetts corporation; Thoro Products Company, a suspended Colorado corporation, Richard Edwin Newman, an individual; Richard Earnest Newman, an individual; and Earl D. Quinnell, an individual, Defendants.

No. 96–WY–1368–CB.

United States District Court, D. Colorado.

Dec. 2, 1996.

Timothy R. Gablehouse, Don Calkins, Gablehouse & Epel, Denver, CO, for William H. Mathews, Vintage Sales, L.L.C.

C. Michael Montgomery, Colleen Belak, Montgomery, Green, Jarvis, Kolodny & Markusson, P.C., Denver, CO, Brent Schindler (Staff Counsel), Midland, MI, for Dow Chemical Company.

Michael R. Hope, Patton Boggs, L.L.P., Denver, CO, for Thoro Products Company, Richard Edwin Newman, Richard Ernest Newman, and Earl D. Quinnell.

Terence C. Gill, Mark J. Mathews, Brownstein Hyatt Farber & Strickland, P.C., Denver, CO, for Parks Corporation.

## ORDER ON MOTIONS TO DISMISS

BRIMMER, District Judge.*

Defendants, Thoro Products Company, Richard Edwin Newman, Richard Earnest Newman, and Earl D. Quinnell (collectively referred to as the "Thoro Defendants"), filed a Motion to Dismiss or in the Alternative, Motion to Strike. Defendant Parks Corporation ("Parks") also filed a Motion to Dismiss. The Court, having reviewed the parties' briefs and being fully advised in the premises, FINDS and ORDERS as follows:

### Background

This case arises out of the discovery of chlorinated hydrocarbon contamination beneath the property of Plaintiffs, William H. Mathews and Vintage Sales, L.L.C.. Plaintiff William Mathews purchased the property located in Arvada, Colorado, in 1993. Prior to purchasing the property, Mathews conducted a prepurchase inquiry into the environmental conditions on the property, which did not disclose any contamination.

In 1994, Mathews conveyed the property to Plaintiff Vintage Sales, L.L.C. Mathews is manager and part owner of Vintage Sales, L.L.C. In 1995, the U.S. Environmental Protection Agency ("EPA") informed Plaintiffs that EPA had detected a groundwater contaminate "plume" of chlorinated hydrocarbons under Plaintiffs' property. EPA indicated the contaminant plume had originated from an adjacent property owned by Defendant Thoro Products Company ("Thoro").

As a result of the contamination, Plaintiffs have filed suit against various defendants. Defendants Richard Edwin Newman, Richard Earnest Newman, and Earl Quinnell were officers and/or directors of Thoro Products Company. The Thoro property was used as a terminal facility for the packaging, storing, and shipping of various cleaning solvents, antifreeze materials, paint thinner, and other hazardous substances. Defendant DOW Chemical Company ("DOW") contracted with Thoro from the mid 1970s until the mid to late 1980s to use the Thoro site as a storage facility for many of its chemical products. Defendant Parks contracted with Thoro during the mid to late 1970s to package paint thinner and other products for Parks on the Thoro site.

Plaintiffs allege that as a result of the activities conducted by the Thoro Defendants, Dow, and Parks, numerous hazardous chemical products were allowed to spill and leak onto the ground at the Thoro site. Plaintiffs allege that these spills and leaks caused the contamination of their property.

Plaintiffs raise ten separate claims under their complaint. The first six claims arise under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, while the last four claims arise under state law:

(1) Claim One is for a declaration of liability under CERCLA § 107(a) for past and future response costs against DOW and Parks;

(2) Claim Two also seeks a declaration of liability under CERCLA § 107(a) but it is against the Thoro Defendants;

(3) Claim Three is for cost recovery under CERCLA § 107 against DOW and Parks;

* Sitting in and for the District of Colorado.

(4) Claim Four is for cost recovery under CERCLA § 107 against the Thoro Defendants;

(5) Claim Five is for a declaration of liability for contribution under CERCLA § 113(f) for past and future response costs against all Defendants;

(6) Claim Six is for contribution under CERCLA § 113(f) against all Defendants;

(7) Claim Seven is for negligence against Dow and Parks;

(8) Claim Eight is for negligence against the Thoro Defendants;

(9) Claim Nine is for negligence *per se* against all Defendants; and

(10) Claim Ten is for continuing trespass against all Defendants.

The Thoro Defendants and Parks now seek to have these claims dismissed. The Court will address each of the Defendants' arguments in turn.

## I. Standard of Review

The Federal Rules of Civil Procedure erect a powerful presumption against rejecting pleadings for failure to state a claim. *Maez v. Mountain States Telephone and Telegraph, Inc.*, 54 F.3d 1488, 1496 (10th Cir. 1995). A court should not dismiss a cause of action under Fed.R.Civ.P. Rule 12(b)(6) unless the court determines that beyond doubt, plaintiff can prove no set of facts that would entitle it to relief. *Federal Deposit Ins. Corp. v. Wise*, 758 F.Supp. 1414, 1416 (D.Colo.1991). "The Court must accept all factual allegations as true and must draw all reasonable inferences in favor of the plaintiff." *Id.* "So long as the plaintiff offers evidence in support of a legally recognized claim for relief, a motion to dismiss must be denied." *Id.*

## II. The Thoro Defendants' Motion to Dismiss, or, in the Alternative, Motion to Strike

The Thoro Defendants move the Court pursuant to Fed.R.Civ.P. Rule 12(b)(6) to dismiss Plaintiffs' six CERCLA claims. In addition, the Thoro Defendants move the Court pursuant to Fed.R.Civ.P. Rule 12(b)(1) to dismiss Plaintiffs' state law claims. Alternatively, the Thoro Defendants move the Court to strike Plaintiffs' demands for recovery of punitive damages and attorneys' fees as set forth in Plaintiffs' state law claims.

### A. CERCLA Section 107 Claims—Plaintiffs' First Through Fourth Claims for Relief

■ The Thoro Defendants first contend that Plaintiffs are not entitled to bring CERCLA section 107 claims because Plaintiffs are potentially responsible parties ("PRPs"). Plaintiffs counter that dismissal of their CERCLA section 107 claims would be improper because they have properly pled an affirmative defense to PRP liability—the "innocent landowner" defense. The Court agrees with Plaintiffs.

■ In the Tenth Circuit, PRPs may not pursue CERCLA section 107 actions and are limited to actions for contribution under CERCLA section 113. *United States v. Colorado & Eastern R.R.*, 50 F.3d 1530, 1534–35 (10th Cir.1995) ("*CERC*"). *CERC* does not address whether a party with a valid affirmative defense to PRP liability may bring a claim under CERCLA section 107. It seems evident, however, that such a party would be entitled to bring a CERCLA section 107 claim since the affirmative defense would absolve them of potential liability. As a result, the Court holds that a party with a valid affirmative defense to PRP liability is not limited to actions for contribution under CERCLA section 113 and may bring claims under CERCLA section 107. *See United Technologies Corp. v. Browning–Ferris Industries, Inc.*, 33 F.3d 96, 100 (1st Cir.1994) (stating that innocent parties are permitted full recovery of costs under CERCLA section 107).

The "innocent landowner" defense is a valid affirmative defense to PRP liability. 42 U.S.C. § 9607(b)(3). The elements of this defense are: (1) "that another party was the 'sole cause' of the release of hazardous substances and the damages caused thereby;" (2) "that the other, responsible party did not cause the release in connection with a contractual, employment, or agency relationship with the defendant;" and (3) "that the defen-

dant exercised due care and guarded against the foreseeable acts or omissions of the responsible party." *Westfarm Associates Limited Partnership v. Washington Suburban Sanitary Commission,* 66 F.3d 669, 682 (4th Cir.1995) (quoting 42 U.S.C. § 9607(b)(3)). In this case, the Court finds that Plaintiffs' Complaint has alleged sufficient facts as to each of these elements.

█ The Thoro Defendants contend that Plaintiffs' Complaint fails to satisfy the third element of the innocent landowner defense in that Plaintiffs failed to conduct a commercially-reasonable environmental inspection prior to the purchase of the property in 1993, which would have revealed to Plaintiffs that the property was contaminated. The Court rejects Defendants' contention. The Court finds that Plaintiffs have alleged that they engaged in a commercially-reasonable inspection and that this issue involves factual issues that are not appropriately resolved in a motion to dismiss. For this reason, the Court refuses to dismiss Plaintiffs' CERCLA section 107 claims.

### B. CERCLA Section 113 Claims— Plaintiffs' Fifth and Sixth Claims for Relief

█ The Thoro Defendants next contend that Plaintiffs have failed to sufficiently plead the response costs that they allegedly have incurred and that Plaintiffs' CERCLA section 113 claims must therefore be dismissed. Plaintiffs contend that the response costs alleged in their Complaint are sufficient to satisfy the notice pleading standard of Fed. R.Civ.P. Rule 8(a). The Court once again agrees with Plaintiffs.

█ To maintain a CERCLA claim, a plaintiff's complaint "must identify at least one prefiling response cost cognizable under CERCLA." *Cook v. Rockwell International Corp.,* 755 F.Supp. 1468, 1475 (D.Colo.1991). In their Complaint, Plaintiffs allege that "[r]esponse costs to date include ... investigative costs, technical consultants' fees, and reasonable pre-litigation attorneys' fees and costs." Both investigative costs and technical 'consultants' fees are recoverable under CERCLA. *City of New York v. Chemical Waste Disposal Corp.,* 836 F.Supp. 968, 980 (E.D.N.Y.1993). The Court therefore finds that Plaintiffs have satisfied the notice pleading requirements of Fed.R.Civ.P. Rule 8(a) and that dismissal of Plaintiffs' fifth and sixth claims would be improper.

### C. Supplemental Jurisdiction over the State Law Claims—Plaintiffs' Seventh through Tenth Claims for Relief

█ The Thoro Defendants contend that the Court should refuse supplemental jurisdiction over Plaintiffs' state law claims because the state law claims raise novel or complex issues of state law and/or will substantially predominate over the CERCLA claims. Plaintiffs contend that their state law claims are properly within the Court's supplemental jurisdiction. As to this issue, the Court agrees with the Thoro Defendants.

█ Pursuant to 28 U.S.C. section 1367(a), a plaintiff's state and federal claims may be tried in one proceeding if both sets of claims derive from a common nucleus of operative fact and the claims are so related that the parties would expect to try them all in one proceeding. *United States v. Colorado & Eastern R.R.,* 832 F.Supp. 304, 307–08 (D.Colo.1993) (citing *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966)). However, district courts may decline to exercise supplemental jurisdiction if: (1) there are claims that raise novel or complex issues of state law; (2) the state claims substantially predominate; (3) the district court has dismissed all the claims over which it had original jurisdiction; or (4) there are other compelling reasons for declining jurisdiction. *55 Motor Avenue Company v. Liberty Industrial Finishing Corp.,* 885 F.Supp. 410, 419 (E.D.N.Y.1994); 28 U.S.C. § 1367(c).

The issue of a court's exercise of supplemental jurisdiction over state claims in CERCLA actions in the District of Colorado has arisen in four separate cases tried before United States District Court Judge Jim Carrigan. *The City and County of Denver v. Alumet Partnership,* Civ. Action No. 94–C–1025 (D.Colo.1994); *United States v. Colorado & Eastern R.R.,* 832 F.Supp. 304

(D.Colo.1993); *Polger v. Republic National Bank,* 709 F.Supp. 204 (D.Colo.1989); *State of Colorado v. Idarado Mining Co.,* Civ. Action No. 83–C–2385 (D.Colo.1983). In each case, Judge Carrigan declined to exercise supplemental jurisdiction over state law claims, finding that the state law claims would have predominated over the CERCLA claims. For example, in *Polger,* the plaintiffs asserted state law claims of negligence and nuisance. Judge Carrigan found that the plaintiffs' traditional tort claims would have involved vastly different types of proof as to both liability and damages and therefore would have predominated over the plaintiffs' CERCLA claim. *Polger,* 709 F.Supp. at 210.

In this case, Plaintiffs attempt to refute Judge Carrigan's reasoning by asserting that their CERCLA claims will involve many similar issues of proof because CERCLA section 113 actions require courts to consider equitable factors such as the degree of each party's fault and the knowledge of each party. Judge Carrigan faced this exact argument in *Alumet Partnership* and soundly rejected it: "[t]he evidence necessary to establish an equitable factor sufficient for the court's consideration differs greatly from the proof required to establish the defendants' claims for negligence or breach of contract." *Alumet Partnership,* Civ. Action No. 94–C–1025.

The Court considers Judge Carrigan's decisions to be compelling authority to find that the Court should not exercise its supplemental jurisdiction over Plaintiffs' state claims. While the Court believes that the state and CERCLA claims do arise out of a common nucleus of operative facts, the Court finds that the state claims would predominate over the CERCLA action. Specifically, the response costs recoverable under CERCLA differ substantially from the compensatory and punitive damages that are available under the state claims. The elements of proof regarding the state tort claims are also substantially different from the strict liability standard of CERCLA section 107 actions. Additionally, the state claims substantially broaden the scope of possible defenses, including comparative negligence and statutes of limitations. Moreover, the Court finds

that Plaintiffs' negligence *per se* claim would raise complex issues of state statutory law under the Colorado Water Quality Control Act, §§ 25–8–101, C.R.S., *et seq.;* the State Hazardous Waste Management Program, §§ 25–15–301, C.R.S., *et seq.;* and Colorado hazardous waste discharge reporting requirements at §§ 29–22–101, C.R.S., *et seq.* The Court therefore refuses to exercise supplemental jurisdiction over Plaintiffs' state law claims.

### D. Punitive Damages and Attorneys' Fees

The Thoro Defendants alternatively move the Court for a motion to strike Plaintiffs' demands for recovery of punitive damages and attorneys' fees as set forth in Plaintiffs' state claims. Because the Court refuses to exercise supplemental jurisdiction over Plaintiffs' state claims, this issue is now moot.

### III. Parks' Motion to Dismiss

Parks moves the Court pursuant to Fed. R.Civ.P. Rule 12(b)(6) to dismiss Plaintiffs' first, third, fifth, and sixth CERCLA claims for relief. In addition, Parks moves the Court pursuant to Fed.R.Civ.P. Rule 12(b)(1) to dismiss Plaintiffs' state law claims for relief.

### A. CERCLA Section 107 and 113 Claims against Parks—Plaintiffs' First, Third, Fifth, and Sixth Claims for Relief

Parks contends that in order for it to be liable under CERCLA, Plaintiffs must allege facts that would support the conclusion that Parks acted as an "arranger" and/or "operator" under CERCLA. Parks contends that Plaintiffs have failed to allege such facts and that Parks therefore is entitled to dismissal of all Plaintiffs' CERCLA claims against Parks. Plaintiffs contend that dismissal would be improper because they have alleged sufficient facts to show that Parks is liable under CERCLA as either an "arranger" or an "operator." For the reasons set forth below, the Court finds that Plaintiffs' allegations are sufficient to show Parks is liable as an "arranger" but not as an "operator" under CERCLA.

CERCLA imposes liability for the clean up of contaminated sites on four classes of parties: (1) "the owners and operators of a facility at which there is a release or threatened release of hazardous substances;" (2) "the owners or operators of such a facility any time in the past when hazardous substances were disposed of;" (3) "any person who arranged for the treatment or disposal of a hazardous substance at the facility;" and (4) "the persons who transported hazardous substances to the facility." *United States v. Aceto Agricultural Chemicals Corp.*, 872 F.2d 1373, 1377 (8th Cir.1989); 42 U.S.C. § 9607(a).

In this case, Plaintiffs contend that Parks "arranged for" the disposal of hazardous substances and/or "operated" a facility at which there was a release of hazardous substances, making Parks a responsible person under CERCLA. Plaintiffs support these contentions by alleging the following facts: (1) the disposal of hazardous substances, through spillage and otherwise, was an inherent part of the contract between Parks and Thoro for the storage and packaging of Parks Products; (2) Parks knew, or should have known, that Parks hazardous substances were being spilled at the Thoro Site; (3) Parks knew, or should have known, that storage tanks at the Thoro Site would periodically be cleaned and flushed with water and that residual Parks hazardous products would be released; (4) Parks retained ownership of the Parks products at all times; (5) Parks controlled activities at the Thoro site connected with the offloading, storage, and shipping of Parks products; and (6) Parks had sufficient authority over the activities at the Thoro Site that it could have prevented or significantly abated the releases of hazardous substances at the Thoro site.

#### 1. Arranger Liability under CERCLA

CERCLA section 107(a)(3) imposes liability on:

any person who by contract, agreement, or otherwise arranged for disposal or treatment ... of hazardous substances owned or possessed by such persons, by any other party or entity, at any facility ... owned or operated by another party or entity and containing such hazardous substances....

42 U.S.C. § 9607(a)(3). CERCLA defines the terms "disposal" and "treatment" using the definitions contained in the Solid Waste Disposal Act. 42 U.S.C. § 9601(29)[1]. CERCLA does not define the term "arranged for." Interpretation of this term, however, is critical because whether the Complaint supports the allegation that Parks "arranged for" the disposal of hazardous substances is the crux of Parks' motion to dismiss.

As an initial matter, it should be noted that courts are required to engage in a liberal judicial interpretation of the terms within CERCLA in order to achieve CERCLA's "overwhelmingly remedial" statutory scheme. *Florida Power & Light Co. v. Allis Chalmers Corp.*, 893 F.2d 1313, 1317 (11th Cir.1990). As to the term "arranged for," no court within the Tenth Circuit has interpreted it; however, several courts in other circuits have grappled with this important issue. Three leading cases regarding this issue, *South Florida Water Management District v. Montalvo*, 84 F.3d 402, 406–409 (11th Cir. 1996) ("Montalvo"); *Amcast Industrial Corp. v. Detrex Corp.*, 2 F.3d 746, 751 (7th Cir. 1993) ("Amcast"); *United States v. Aceto Agricultural Chemicals Corp.*, 872 F.2d 1373, 1378–82 (8th Cir.1989) ("Aceto"), have each taken different approaches in interpreting "arranged for."

The Eighth Circuit in *Aceto* provides the most liberal interpretation of "arranged for." In *Aceto*, the defendants were pesticide manufacturers who hired a formulating company

1. 42 U.S.C. § 6903(34) defines "Treatment" as: Any method, technique, or process, including neutralization, designed to change the physical, chemical or biological character or composition of any hazardous waste so as to neutralize such waste or so as to render such wastes nonhazardous, safer for transport, amenable for recovery, amenable for storage, or reduced in volume.

42 U.S.C. § 6903(3) defines "Disposal" as: The discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters.

to mix and package pesticides for them. The pesticide manufacturers filed a motion to dismiss the complaint of the plaintiff, the United States. In its complaint, the United States alleged that the pesticide manufacturers owned the pesticide chemicals throughout the formulating and packaging process, although it was the formulating company who actually mixed and packaged the pesticide. The United States also alleged that the generation of pesticide wastes through spills, cleaning equipment, and mixing batches of pesticide was "inherent" in the formulation process. On this basis, the United States argued the pesticide manufacturers could not have hired the formulating company without also "arranging for" the disposal of hazardous substances. The defendant pesticide manufacturers countered that they contracted with the formulating company for the processing of a valuable product, not the disposal of waste, and that the formulating company alone controlled the processing of the pesticides and the disposal of any resulting wastes.

With the parties' contentions established, the Eighth Circuit began its analysis of the term "arranged for" by noting the two essential purposes of CERCLA, which were: (1) to provide the federal government with tools for prompt and effective responses to the problem of hazardous waste; and (2) to ensure those responsible for the problems of waste disposal bear the responsibility for the clean up. *Aceto,* 872 F.2d at 1380. To further CERCLA's second purpose, the Eighth Circuit found it necessary to look beyond the pesticide manufacturers' characterization of their relationship with the formulating company to determine if the transactions in fact involved an arrangement for the disposal of hazardous substances. *Id.* at 1381. The Eighth Circuit then found that the complaint alleged sufficient facts to hold that the pesticide manufacturers had "arranged for" the disposal of hazardous wastes. *Id.* at 1382. This ruling was based on the fact that the pesticide manufacturers owned the pesticides throughout the process and that the generation of hazardous waste was inherent in the mixing and packaging process. *Id.* at 1380–82. In finding the pesticide manufacturers had "arranged for" the disposal of wastes, it

is important to note that the Eighth Circuit did not require that the pesticide manufacturers intended for the wastes to be disposed.

In contrast to *Aceto,* the Seventh Circuit in *Amcast* provides the most conservative interpretation of "arranged for." In *Amcast,* the principal plaintiff, Elkhart, manufactured copper fittings at a plant in Indiana. One of the chemicals Elkhart used in the manufacturing process was trichloroethylene (TCE), which Elkhart purchased from the defendant Detrex, a chemical manufacturer. Detrex sometimes delivered TCE in its own trucks and sometimes hired a common carrier, Transport Services. TCE was discovered in the groundwater on property adjacent to Elkhart's plant. There was evidence that both Detrex's and Transport Service's drivers spilled TCE accidentally on Elkhart's property when unloading the TCE into Elkhart's storage tanks. The issue to be decided by the Seventh Circuit on the parties' summary judgment motions was whether defendant Detrex could be considered to have "arranged for" the disposal of hazardous substances by hiring Transport Services to transport its TCE to Elkhart.

In resolving this issue, the Seventh Circuit, unlike the Eighth Circuit in *Aceto,* focused exclusively on the intent of Detrex. The Seventh Circuit stated that:

> [t]he words ['arranged for'] imply intentional action. The only thing that Detrex arranged for Transport Services to do was to deliver TCE to Elkhart's storage tanks. It did not arrange for spilling the stuff on the ground.... [W]hen the shipper is not trying to arrange for the disposal of hazardous wastes, but is arranging for the delivery of a useful product, he is not a responsible person within the meaning of the statute and if a mishap occurs en route his liability is governed by other legal doctrines.

*Amcast,* 2 F.3d at 751. The Seventh Circuit thus concluded that Detrex was responsible for the spillage from its own trucks but not the spillage from the trucks of the common carrier. *Id.*

The Eleventh Circuit in *Montalvo* strikes a middle ground between the *Aceto* and *Amcast* decisions. *Montalvo* involved a third-party complaint filed by the defendants Chemspray and Juan Montalvo ("the Sprayers") against various farming and ranching corporations ("the Landowners") that contracted with the Sprayers for aerial spraying services. In their third-party complaint, the Sprayers alleged that the Landowners had "arranged for" the disposal of various spraying chemicals by: (1) owning the spraying chemicals throughout the application process; and (2) the fact that the generation of hazardous wastes from the spraying chemicals was a necessary incident to the application process because of the mixing, loading, and cleaning of the spraying chemicals at the contaminated site. The Landowners filed a motion to dismiss the Sprayers' third-party complaint contending that the above facts were not sufficient to show that the Landowners had "arranged for" the disposal of hazardous substances.

Rather than focus on a single factor, the Eleventh Circuit in *Montalvo* adopted a case-by-case approach in which courts are to focus on all the relevant facts. *Montalvo*, 84 F.3d at 407. The Eleventh Circuit stated that factors, such as intent, ownership, and knowledge, were all useful in assisting a court in determining whether a party had "arranged for" the disposal of hazardous substances. *Id.* at 406–07. Examining the specific facts alleged, the Eleventh Circuit found the Sprayers' complaint failed to allege any facts from which the court could infer the Landowners had implicitly agreed to the disposal of wastes. *Id.* at 408. The Sprayers had not alleged that the Landowners assisted in the loading or rinsing out of the application tanks or that the Landowners even knew about the spraying chemical spills. *Id.* at 407. Nor had the Sprayers alleged that the Landowners had the duty or authority to monitor or control the Sprayers' activities. *Id.* at 407–08. As a result, the Eleventh Circuit held that the Landowners had not "arranged for" the disposal of any hazardous substances and dismissed the Sprayers' complaint. *Id.* at 409.

After careful consideration, the Court finds that the Eleventh Circuit's approach in *Montalvo* is most faithful to the statutory language and purposes of CERCLA. The Court rejects the Eighth Circuit's approach in *Aceto* because the Court believes it stretches the meaning of "arranged for" too far. In contrast, the Court finds that the Seventh Circuit's approach in *Amcast* is too limited and does not adequately consider the remedial nature of CERCLA. As a result, the Court will apply the Eleventh Circuit's fact specific approach to determine whether Plaintiffs' complaint alleges sufficient facts to show that Parks "arranged for" the disposal of hazardous substances.

■ Accepting all factual allegations as true, the Court finds that Plaintiffs' Complaint does allege sufficient facts to show Parks "arranged for" the disposal of hazardous substances. Specifically, Plaintiffs allege that spills were an inherent part of the packaging and storage process between Parks and Thoro and that Parks knew or should have known that its products were being spilled and/or leaking. Additionally, Plaintiffs allege that Parks retained ownership of its products throughout the storing and packaging process, that Parks controlled certain activities at the Thoro site, and that Parks had the authority to abate the releases of its product. These allegations distinguish this case from the facts in *Montalvo*. Thus, under the *Montalvo* standard, the Court finds that Plaintiffs Complaint adequately states a claim upon which relief may be granted.

### 2. Operator Liability under CERCLA

■ CERCLA section 107(a)(2) imposes liability on "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." 42 U.S.C. § 9607(a)(2). An "operator" is circularly defined as a person operating a facility. 42 U.S.C. § 9601(20)(A)(ii). Thus, as was the case with the term "arranged for," the courts have been left with the task of interpreting the meaning of the term "operated." The Tenth Circuit has not had the opportunity to give its interpretation of the term "operated"

as it relates to CERCLA liability, but several other circuits have.

In order to impose operator liability upon one corporation for the acts of another corporation, most courts have required the corporation to have exercised "substantial control" over the other corporation. *FMC Corp. v. U.S. Department of Commerce,* 29 F.3d 833, 843 (3rd Cir.1994); *Jacksonville Electric Authority v. Bernuth Corp.,* 996 F.2d 1107, 1110 (11th Cir.1993); *United States v. Kayser–Roth Corp.,* 910 F.2d 24, 27 (1st Cir.1990); *Edward Hines Lumber Co. v. Vulcan Materials Co.,* 861 F.2d 155, 156–59 (7th Cir.1988). Substantial control at a minimum requires "active involvement in the activities" of the other corporation. *FMC Corp.,* 29 F.3d at 843. According to the Eleventh Circuit, the corporation must " 'exercise actual and pervasive control of the [other corporation] to the extent of actually involving itself in the daily operations of the [other corporation].' " *Jacksonville Electric Authority,* 996 F.2d at 1110 (quoting *Jacksonville Electric Authority v. Bernuth Corp.,* 776 F.Supp. 1542, 1547–48 (M.D.Fla.1991)).

In this case, Plaintiffs allege that Parks controlled activities at the Thoro site connected with the offloading, storage, and shipping of Parks products and that Parks had authority over such activities. The Court finds that these allegations alone are not sufficient to satisfy the "substantial control" standard articulated above because they fail to specify the degree of control exercised by Parks. To be held liable as an operator of the Thoro facility, Parks must have been involved in the daily operations of the facility and have exercised pervasive control over its operations. The Court therefore finds, as a matter of law, that Parks cannot be considered an "operator" of the Thoro facility under CERCLA section 107(a)(2). Because Parks may still be held liable as an "arranger," the Court declines to dismiss Plaintiffs' CERCLA claims against Parks.

**B. Supplemental Jurisdiction over the State Law Claims—Plaintiffs' Seventh through Tenth Claims for Relief**

The Court adequately addressed this issue in Section II.C. It is therefore unnecessary to discuss it here.

*Conclusion*

For the foregoing reasons, the Court **ORDERS** that the Thoro Defendants' Motion to Dismiss or in the Alternative, Motion to Strike and Defendant Parks' Motion to Dismiss are **GRANTED IN PART** and **DENIED IN PART.** The Court **ORDERS** that the Thoro Defendants' and Parks' Fed. R.Civ.P. Rule 12(b)(6) motions to dismiss Plaintiffs' CERCLA claims (Claims One through Six) are **DENIED.** However, the Court **FINDS** as a matter of law that Parks cannot be held liable as an "operator" under CERCLA section 107(a)(2).

The Court further **ORDERS** that the Thoro Defendants' and Parks' Fed.R.Civ.P. Rule 12(b)(1) motions to dismiss Plaintiffs' state law claims (Claims Seven through Ten) are **GRANTED.** Plaintiffs' state law claims are therefore **DISMISSED WITHOUT PREJUDICE.**

