84 F.3d 402
 42 ERC 1769, 64 USLW 2774, 26 Envtl.
L. Rep. 21,398
 The SOUTH FLORIDA WATER MANAGEMENT DISTRICT, New Farm Inc., Plaintiffs,
v.
Juan MONTALVO, Chemairspray, Inc., Chemspray, Inc., Glades
Formulating Corp., Defendants-Third Party
Plaintiffs-Appellants,
CIBA-GEIGY CORP., Du Pont (E.I.) De Nemours & Co., Monsanto
Co., Rohm & Hass Co., Coca-Cola Co., Griffin Corp.,
Sherwin-Williams Co., Boyton (J.T.) Farms, Inc., Camayen
Cattle Co., Gulf & Western Inc., Hatton Bros., Inc., Robert
(C) Hatton, Manatee Plantations, Inc., Sod Co., Seminole
Sugar Corp., Sugar Cane Growers, Corp., Tailisman Sugar
Corp., Trucane Sugar Corp., United Cane Cooperation Assoc.,
Hercules Inc., Camayen Farms Co., Double D Properties Inc.,
Defendants-Third-Party Defendants-Appellees.
The South Florida Water Management District, New Farm Inc., Plaintiffs,
v.
Juan MONTALVO, Chemairspray, Inc., Chemspray, Inc., Glades
Formulating Corp., Defendants-Third-Party
Plaintiffs-Appellants,
Ciba-Geigy Corp., Du Pont (E.I.) De Nemours & Co., Monsanto
Co., Rohm & Hass Co., Defendants-Third-Party Defendants,
Coca-Cola Co., Defendant-Third-Party Defendant-Appellee,
Griffin Corp., Sherwin-Williams Co., Boyton (J.T.) Farms,
Inc., Camayen Cattle Co., Gulf & Western Inc., Hatton Bros.,
Inc., Robert (C) Hatton, Manatee Plantations, Inc., Sod Co.,
Seminole Sugar Corp., Sugar Cane Growers, Corp., Tailisman
Sugar Corp., Trucane Sugar Corp., United Cane Cooperation
Assoc., Hercules Inc., Camayen Farms Co., Double D
Properties Inc., Defendants-Third-Party Defendants.
 Nos. 93-5113, 94-4397.
 United States Court of Appeals,
Eleventh Circuit.
 June 3, 1996.
 
 Philip M. Burlington, West Palm Beach, FL and James R. Hubbard, West Palm Beach, FL, for appellants.
 Arnold L. Berman, West Palm Beach, FL, Anthony Dimatteo, West Palm Beach, FL, Boynton, Camayen, Miami Sugag Cane, Trucane, United Cane, Cooper Assoc., and Jonathan D. Gerber, Shutts & Bowen, West Palm Beach, FL, for Double D Management & Double D Properties.
 Patricia T. Barmeyer, Carol M. Wood, Atlanta, GA, for The Coca-Cola Company.
 Appeals from the United States District Court for the Southern District of Florida.
 Before HATCHETT and BLACK, Circuit Judges, and CLARK, Senior Circuit Judge.
 BLACK, Circuit Judge:
 
 
 1
 In this appeal, we are asked to define the limits of "arranged for" liability under § 107(a)(3) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA), 42 U.S.C. § 9607(a)(3). Third-Party Plaintiffs Juan Montalvo, Chemairspray, Inc., Chemspray, Inc., and Glades Formulating Corporation (collectively, "the Sprayers") sued a group of landowners in south Florida (the Landowners) claiming the Landowners were liable under CERCLA for cleaning up property in Palm Beach County, Florida, that had become contaminated with pesticide wastes. The district court dismissed the Sprayers' CERCLA claim after concluding the Sprayers had failed to allege the Landowners "arranged for" the disposal of hazardous substances within the meaning of § 107(a)(3). We affirm, concluding the allegations of the Sprayers' third-party complaint do not state a claim for relief under CERCLA against the Landowners.
 
 I. BACKGROUND
 
 2
 For an undisclosed number of years, Chemspray and Chemairspray provided pesticide formulating and aerial spraying services in south Florida. The location of their businesses, the "Chemairspray Site," is comprised of two separate pieces of realty in Palm Beach County. Chemairspray, the company providing spraying services, leased a 10-acre parcel on which it maintained an airstrip. The other corporation, Chemspray, owned a 14-acre plot adjacent to the airstrip with a hangar and storage facilities. Chemspray formulated pesticides from chemicals supplied by chemical manufacturers. Juan Montalvo allegedly controlled both Chemspray and Chemairspray while they were in business.
 
 
 3
 Chemairspray contracted with farmers and ranchers throughout south Florida to spray their lands with aerial pesticides and herbicides. As a result of Chemairspray's operations, the Site became contaminated with pesticide wastes. This contamination was due in part to pesticides being spilled on the airstrip and surrounding land during the mixing and loading of pesticides into the applicating tanks of planes. Pesticide wastes were also released when, after spraying runs, the applicating tanks of the planes were rinsed out, and the contaminated rinse water was allowed to drain onto the Site.
 
 
 4
 The property leased by Chemairspray was eventually purchased by New Farm, Inc. In 1985, Florida Department of Environmental Regulation sued New Farm to compel a clean up of the Site. As part of its investigation, New Farm discovered the contamination had spread to adjacent lands owned by New Farm and the South Florida Water Management District (SFWMD).
 
 
 5
 In 1988, New Farm and SFWMD initiated the present litigation when they sued Chemairspray, Chemspray and Montalvo claiming they were liable under CERCLA for cleaning up the Site and neighboring lands. By the time this suit was filed, both Chemairspray and Chemspray had been dissolved. New Farm and SFWMD later joined Glades Formulating Corporation as a defendant alleging the company was a successor corporation to Chemspray, the pesticide formulator. All four defendants, the Sprayers, eventually admitted their liability under CERCLA. Following a bench trial, the district court found the Sprayers jointly and severally liable for 75%[1] of the costs incurred in cleaning up the Site.[2]
 
 
 6
 The Sprayers thereafter filed their third-party complaint seeking contribution under CERCLA from, among other parties, various farming and ranching corporations that had contracted with the Sprayers for aerial spraying services.[3] The allegations supporting CERCLA liability against each of these companies are virtually identical, alleging that each corporation:
 
 
 7
 contracted with Third-Party Plaintiffs [the Sprayers] to apply and/or distribute herbicides, insecticides and/or pesticides ... which [the defendant] owned throughout the application and/or distribution processes. The generation of hazardous wastes from these products was a necessary incident of the application and/or distribution processes by virtue of mixing and loading the products into the aerial applicating plane at the CHEMAIRSPRAY site, as well as rinsing out the applicating tanks at the CHEMAIRSPRAY site following application to [the defendant's] land. Third-Party Plaintiffs' actions in handling, storing and disposing of such hazardous wastes at the CHEMAIRSPRAY site were performed as agents/independent contractors for [the defendant]. By virtue of its contracts and commercial relationships with the Third-Party Plaintiffs, industry practices, and all other relevant circumstances [the defendant] arranged for the disposal of such wastes.
 
 
 8
 A number of the farming and ranching companies, whom we collectively refer to as "the Landowners," moved to dismiss the Sprayers' CERCLA claim under Fed.R.Civ.P. 12(b)(6).[4] The district court granted the Landowners' motion concluding the Sprayers had not alleged facts stating the Landowners had "arranged for" the disposal of hazardous substances within the meaning of § 107(a)(3) of CERCLA. In particular, the district court found the Sprayers had not alleged any "substantial ties" between the Landowners and the Sprayers' disposal of pesticide wastes.[5] The court entered final judgment on the CERCLA claim against the Landowners from which the Sprayers now appeal.
 
 II. STANDARD OF REVIEW
 
 9
 In reviewing de novo a dismissal pursuant to Rule 12(b)(6), we apply the same standard as did the district court. Marshall County Bd. of Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir.1993) (citation omitted). The factual allegations of the plaintiff's complaint are accepted as true for the purposes of a motion to dismiss. Id. The motion must be denied unless it is clear the plaintiff can prove no set of facts in support of the claims in the complaint. Id.
 
 III. DISCUSSION
 
 10
 The Sprayers brought their contribution claim against the Landowners under §§ 107(a) and 113(f) of CERCLA, 42 U.S.C. §§ 9607(a), 9613(f). Section 113(f) provides "[a]ny person may seek contribution from any other person who is liable or potentially liable under section 9607(a) [107(a) ] of this title...." 42 U.S.C. § 9613(f). To prevail on their claim under § 113(f), the Sprayers must demonstrate the Landowners are members of one or more of the four classes of responsible parties amenable to suit under § 107(a). Id.
 
 
 11
 The allegations of the Sprayers' third-party complaint attempt to portray the Landowners as parties who "arranged for" the disposal of hazardous substances at the Chemairspray Site. Section 107(a)(3) of CERCLA imposes liability on:
 
 
 12
 any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances.
 
 
 13
 42 U.S.C. § 9607(a)(3). Since the Sprayers have not alleged the Landowners expressly agreed to dispose of hazardous substances at the Site, the question becomes whether the Landowners, by virtue of their contracting with the Sprayers for aerial spraying services, are parties who "otherwise arranged for" the disposal of hazardous substances.
 
 
 14
 As we have noted before, CERCLA does not define the phrase "arranged for." Florida Power & Light Co. v. Allis Chalmers Corp., 893 F.2d 1313, 1317 (11th Cir.1990) [hereinafter FP & L ]. Congress has left this task to the courts, and the courts have at times struggled with the contours of "arranger" liability under § 107(a)(3).[6] When analyzing whether a particular transaction amounted to an arrangement to dispose, courts have focused on various factors. For example, where the transaction involved a sale, courts have asked whether there was a transfer of a "useful" or "waste" product. See AM Int'l, Inc. v. International Forging Equip. Corp., 982 F.2d 989, 999 (6th Cir.1993); Prudential Ins. Co. v. United States Gypsum, 711 F.Supp. 1244, 1254 (D.N.J.1989). In several cases, courts have considered whether the defendant intended to dispose of a substance at the time of a transaction. See Amcast Indus. Corp. v. Detrex Corp., 2 F.3d 746, 751 (7th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 691, 126 L.Ed.2d 658 (1994); United States v. CelloFoil Prods., Inc., 848 F.Supp. 1352, 1357 (W.D.Mich.1994); Edward Hines Lumber Co. v. Vulcan Materials Co., 685 F.Supp. 651, 654-56 (N.D.Ill.), aff'd, 861 F.2d 155 (7th Cir.1988). Courts have also looked to whether a defendant made the "crucial decision" to place hazardous substances in the hands of a particular facility. See United States v. A & F Materials Co., 582 F.Supp. 842, 845 (S.D.Ill.1984).
 
 
 15
 Citing these and other reported cases, litigants have at times elevated factors courts found pertinent in particular contexts to the status of bright-line rules for defining arranger liability. See, e.g., FP & L, 893 F.2d at 1317-18 (citing the reasoning from A & F Materials ). In FP & L, however, we rejected any attempt to substitute a per se rule for the phrase "arranged for" as used in § 107(a)(3)'s text. Id. at 1318.[7] When determining whether a party has "arranged for" the disposal of a hazardous substance, courts must focus on all of the facts in a particular case. Id. at 1317-18. While factors such as a party's knowledge (or lack thereof) of the disposal, ownership of the hazardous substances, and intent are relevant to determining whether there has been an "arrangement" for disposal, they are not necessarily determinative of liability in every case.
 
 
 16
 Since this case comes to us on a motion to dismiss, we accept as true the facts as pled in the Sprayers' third-party complaint. The Sprayers assert the following supports finding the Landowners "arranged for" the disposal of pesticide wastes at the Chemairspray Site: (1) the Landowners contracted with the Sprayers to have pesticides applied to their property; (2) the Landowners owned the pesticides throughout the application process; (3) the generation of hazardous wastes was a necessary incident to the application process; and (4) the Sprayers acted as the Landowners' agents and/or independent contractors in applying the pesticides and handling the pesticide wastes.[8]
 
 
 17
 The only link alleged between the Landowners and the Sprayers is the Landowners' contracting with the Sprayers for aerial spraying services. The Sprayers contend this is sufficient to establish liability, given the Landowners owned the pesticides during the application process and the generation of hazardous wastes was a necessary part of the process. We disagree. The Landowners contracted to have pesticides applied to their property. They did not agree to have pesticides and contaminated rinse water spilled onto the Chemairspray Site.
 
 
 18
 For the Landowners to have "arranged for" the disposal of the pesticide wastes, they must have done more than simply contracted for aerial spraying services. The Sprayers must demonstrate the Landowners took some affirmative act to dispose of the wastes. AM Int'l, 982 F.2d at 999. The allegations in the Sprayers' complaint do not disclose the Landowners took such an act. The Landowners did not assist the Sprayers in loading the planes or rinsing out the applicating tanks. Indeed, the Sprayers have not even alleged the Landowners knew about the spills at the Site. Nor have the Sprayers alleged the Landowners had either the duty or authority to monitor or control the Sprayers' activities. In other words, there are no allegations from which we can infer the Landowners implicitly agreed to the disposal of these wastes.
 
 
 19
 The Sprayers analogize this case to the Eighth Circuit's decision in United States v. Aceto Agric. Chems. Corp., 872 F.2d 1373 (8th Cir.1989), to demonstrate the Landowners effectively controlled the disposal of wastes at the Site.[9] In Aceto, the United States and the State of Iowa sued a group of chemical manufacturers under CERCLA to recover costs incurred in cleaning up the site of a pesticide formulation business. Id. at 1375. The plaintiffs alleged the manufacturers sent raw chemicals to the formulator for mixing and conversion into commercial pesticides. Id. at 1378. "Inherent" in the formulating process was the generation of hazardous wastes through "spills, cleaning of equipment, mixing and grinding operations, production of batches which [did] not meet specifications, and other means." Id. According to the complaint, the manufacturers specified what pesticides they wanted produced, and retained ownership of the chemicals throughout the formulating process. Id. Once the pesticides had been formulated, they were either shipped back to the manufacturers or forwarded to their customers. Id. at 1375. Under these circumstances, the Eighth Circuit concluded the plaintiffs in Aceto had stated a claim for "arranged for" liability under CERCLA, and upheld the denial of the manufacturers' motion to dismiss. Id. at 1382.
 
 
 20
 The service contracted for in Aceto bears little resemblance to the service the Landowners purchased in this case. The chemical manufacturers in Aceto contracted for formulating services requiring the mixing of active and inactive chemicals according to the manufacturers' specifications. Since the manufacturers provided the chemicals to the formulator, specified what pesticides the formulator was to mix, and retained ownership of the chemicals and pesticides throughout the formulating process, it was possible to infer the manufacturers exercised some control over the formulator's mixing process. See id. at 1381-82.
 
 
 21
 In contrast, the Landowners contracted with the Sprayers to have formulated pesticides sprayed on their property. That the Landowners owned the pesticides during the application process does not, by itself, imply the kind of control over the Sprayers' application procedures that the chemical manufactures had over the formulator's process in Aceto.
 
 
 22
 In Aceto, the mixing and packaging of pesticides "inherently" involved the creation of hazardous wastes such that the manufacturers should have expected the formulator would have to dispose of these wastes as part of the service they were purchasing. The service the Sprayers contracted for--aerial pesticide spraying--does not obviously involve the creation and disposal of hazardous wastes. Granted, the Sprayers have alleged the generation of pesticide wastes was a "necessary incident" to the application process.[10] This may be so, but the Sprayers have not alleged the Landowners knew about this incidental by-product of the service they were purchasing. Whereas it was possible to infer the chemical manufacturers in Aceto knew about the creation of hazardous wastes given the service they were being provided, we cannot infer the Landowners had similar knowledge that spraying their crop and pasture lands with pesticides entailed the spilling of pesticides and draining of contaminated rinse water. Without this knowledge, the Landowners cannot be said to have acquiesced to the Sprayers' disposal of the wastes.
 
 
 23
 In the past, we have stated that "arranged for" must be liberally construed to promote CERCLA's remedial scheme. FP & L, 893 F.2d at 1317 (citing United States v. Northeastern Pharm. & Chem. Co., 810 F.2d 726, 733 (8th Cir.1986), cert. denied, 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987)). CERCLA liability, however, is not boundless. The Sprayers cannot escape the fact they were the parties who spilled the hazardous substances that contaminated the Chemairspray Site. While there may be circumstances where the Landowners could be deemed to have arranged for the disposal of these wastes under § 107(a)(3), the Sprayers have not alleged these circumstances exist here. Essentially, the Sprayers seek to hold the Landowners liable merely because the Landowners contracted for a service that involved the application of hazardous substances. We think this stretches the meaning of "arranged for" too far.[11]
 
 
 24
 At the same time, we decline the Landowners' invitation to broadly exclude from CERCLA's reach cases where a plaintiff seeks to hold a defendant liable because the defendant contracted for a service involving the use and disposal of hazardous substances. We emphasize that whether or not a party has "arranged for" the disposal of a hazardous substance depends on the particular facts of each case. In upholding the district court's dismissal of the Sprayers' complaint against the Landowners, we are not endorsing the view that parties who contract for services involving the application of hazardous substances can never be found liable under § 107(a)(3). Rather, we conclude the Sprayers have simply not alleged the Landowners had sufficient knowledge of or control over the Sprayers' disposal practices to be held liable under this provision.
 
 IV. CONCLUSION
 
 25
 After reviewing the allegations of the Sprayers' third-party complaint, we agree with the district court's conclusion the Sprayers can prove no set of facts supporting their contribution claim against the Landowners under CERCLA. Dismissal under Rule 12(b)(6) was therefore proper.
 
 
 26
 AFFIRMED.
 
 
 
 [1]
 As the current owner of the property, New Farm was found to be a "covered person" under § 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1), and held liable for 25% of the clean-up costs
 
 
 [2]
 The district court's orders finding the Sprayers liable and proportioning damages between the Sprayers and New Farm are not at issue in this appeal
 
 
 [3]
 The Sprayers' amended third-party complaint divides the third-party defendants into two groups: "manufacturers/suppliers" and "landowners." The "manufacturers/suppliers" are chemical companies which allegedly supplied the Sprayers with chemicals for formulating into commercial pesticides and herbicides. The Sprayers generally allege that each of these defendants contracted with the Sprayers to formulate, package and distribute pesticides, and that this activity resulted in contamination at the Site. The Sprayers assert CERCLA and state common law indemnity and contribution claims against these defendants. The Sprayers' claims against the "manufacturer/supplier" defendants are not at issue in this appeal
 Listed as "landowner" defendants are the following: Boyton (J.T.) Farms, Inc., Camayen Cattle Co., Camayen Farms Co., Double D Management Co., Double D Properties, Inc., Gulf & Western Inc., Hatton Brothers, Inc., Hatton (Robert C.), Inc., Manatee Plantations, Inc., Miami Sod Co., Seminole Sugar Corp., Sugar Cane Growers Cooperative of Florida, Talisman Sugar Corp., Trucane Sugar Corp., and United Cane Cooperative Association. Coca-Cola is listed as a "manufacturer/supplier" in the amended third-party complaint, but the Sprayers conceded in the district court that the company should be treated as a "landowner." The Sprayers assert only a CERCLA claim against the "landowner" defendants.
 
 
 [4]
 Boyton (J.T.) Farms, Inc., Camayen Cattle Co., Camayen Farms Co., Hatton (Robert C.), Inc., Manatee Plantations, Inc., Miami Sod Co., Seminole Sugar Corp., Sugar Cane Growers Cooperative of Florida, and Trucane Sugar Corp. moved to dismiss on August 1, 1989. Double D Management Co. and Double D Properties, Inc., filed a separate motion to dismiss on September 25, 1989. The district court consolidated these motions for the purpose of ruling on them
 Coca-Cola moved for judgement on the pleadings in July 1991. The court granted this motion on the same grounds as it did the earlier motions to dismiss.
 
 
 [5]
 The court further reasoned CERCLA's "pesticide exemption" of § 107(i), 42 U.S.C. 9607(i), supported its finding that a party cannot be deemed to have "arranged for" the disposal of hazardous waste when it has merely contracted for the application of pesticides
 
 
 [6]
 As the Eighth Circuit has noted, CERCLA's legislative history offers us little guidance in ascertaining the meaning of "arranged for." United States v. Aceto Agric. Chems. Corp., 872 F.2d 1373, 1380 n. 8 (8th Cir.1989)
 
 
 [7]
 Contrary to the Sprayers' belief, this Court in FP & L did not reject the reasoning and holding in A & F Materials. In FP & L, the manufacturers of electrical transformers argued A & F Materials identified a bright-line rule for when a party could be deemed to have arranged for the disposal of a hazardous substance. FP & L, 893 F.2d at 1318. Rather than disagreeing with the decision in A & F Materials, we simply declined to adopt its reasoning as establishing a per se rule of liability. Id. We agree with the reasoning of A & F Materials to the extent that, in certain cases, who made the decision of when and where a substance was disposed of is relevant to determining liability under § 107(a)(3)
 
 
 [8]
 This last allegation--that the Sprayers acted as the Landowners' agents/independent contractors--adds nothing to the Sprayers' claim. The Sprayers have not alleged any basis for an agency relationship beyond the Landowners having contracted for spraying services. Characterizing this act as creating an agency between the parties does not lead to the conclusion the Landowners "arranged for" the disposal of hazardous wastes. While common law principles of agency are relevant in determining CERCLA liability in some instances, see Aceto, 872 F.2d at 1382; Edward Hines Lumber Co. v. Vulcan Materials Co., 861 F.2d 155, 157 (7th Cir.1988), they add nothing to the analysis here. The Sprayers must establish the Landowners "arranged for" the disposal of the pesticide wastes. Whether or not the Landowners' conduct also created an agency/independent contractor relationship is irrelevant
 
 
 [9]
 The Sprayers erroneously contend that in FP & L we approved of the entire analysis and holding in Aceto. In FP & L, we agreed with the Eighth Circuit's statement that courts must look behind the parties' characterizations of a transaction to determine whether there has been an arrangement for disposal of a hazardous substance. FP & L, 893 F.2d at 1318 (citing Aceto, 872 F.2d at 1381). This limited reference to Aceto's reasoning cannot be interpreted as a wholesale adoption of Aceto as the law of this circuit
 
 
 [10]
 The Landowners contend this allegation is an unwarranted assumption contradicted by a prior finding of the district court. In granting partial summary judgment in favor of New Farm and SFWMD on the issue of the Sprayers' liability under CERCLA, the district court concluded the spilling of pesticides at the Chemairspray Site was not an "integral act[ ]" in the application of pesticides. (Order of Partial Summ.J. filed Nov. 7, 1988, at 6). The Sprayers attached a copy of this summary judgment order as an exhibit to their third-party complaint against the Landowners
 As a general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss. Associated Builders, Inc. v. Alabama Power Co., 505 F.2d 97, 100 (5th Cir.1974) (citation omitted). While the Landowners urge us to ignore the Sprayers' allegation that the generation of hazardous wastes was a "necessary incident" of the service they provided, we find it unnecessary to do so in this case. Even assuming the truth of this allegation, we find the Sprayers have not stated a claim under CERCLA.
 
 
 [11]
 Our conclusion that the Landowners' act of contracting for spraying services does not by itself amount to an arrangement for disposal of hazardous substances is bolstered by CERCLA's "pesticide exemption." This provision states in relevant part:
 No person ... may recover under the authority of this section for any response costs or damages resulting from the application of a pesticide product registered under the Federal Insecticide, Fungicide, and Rodenticide Act."
 42 U.S.C. § 9607(i).
 The pesticide exemption does not, standing alone, absolve the Landowners of liability under CERCLA. The contamination at the Chemairspray Site did not result from the application of pesticides to the Landowners' property. Rather, it resulted from spills while loading planes and the drainage of contaminated rinse water following spraying runs. If the Landowners were being sued for contamination of their own property caused by the application of pesticides, then the Landowners' liability would end at § 107(i).
 While this is not the case, the pesticide exemption lends credence to the view that the Sprayers have failed to state a claim of "arranged for" liability against the Landowners. The Landowners contracted with the Sprayers "to apply and/or distribute" pesticides. Again, the only reasonable assumption based on the allegations of the Sprayers' complaint is the Landowners contracted to have pesticides applied to their property--not spilled on the Chemairspray Site. Given § 107(i) insulates the Landowners from liability for any contamination resulting from the application of pesticides to their property, it would be inconsistent to read § 107(a)(3) as imposing liability based on the Landowners having contracted to have pesticides applied to their property.