BRIGGS & STRATTON CORPORATION,
a Wisconsin corporation, Plaintiff,

v.

CONCRETE SALES & SERVICES, INC.,
a Georgia corporation; Frances M.
Coody and Timothy A. McCord, as
Trustees for the Irrevocable Trust of
T.A. McCord, Jr.; Turner Ashby McCord,
Jr.; Alvin E. DeGraw, Jr.; and Peach
County, Georgia, Defendants.

v.

David E. ROSE; Peach Metal Industries,
Inc.; Ann H. DeGraw as Executrix of
the Estate of Alvin E. DeGraw, Sr.; Mi-
chael J. Bogna, Bluebird Body Compa-
ny; Cardinal Manufacturing Company;
Allied Chemical Corporation; South-
eastern Bolt & Screw, Inc.; Simplex
Nails; Scientific Atlanta; and Thiokol
Corporation, Third–Party Defendants.

No. 5:95–cv–525–1 (WDO).

United States District Court,
M.D. Georgia,
Macon Division.

July 7, 1997.

Joan B. Cravey, Daniel S. Reinhardt, Atlanta, GA, for Briggs & Statton Corporation.

Linwood Robert Lovett, J. Douglas Cowart, Macon, GA, for Concrete Sales and Services, Inc.

Linwood Robert Lovett, J. Douglas Cowart, Craig N. Cowart, Macon, GA, for Frances M. Coody, Timothy A. McCord.

Robert C. Norman, Jr., Macon, GA, for Turner Ashby McCord, Jr.

Alvin E. DeGraw, Jr., Fort Valley, GA, pro se.

Charles R. Adams, III, Ft. Valley, GA, Travis M. Trimble, Susan S. Cole, Charles E. Cox, Jr., Macon, GA, for Peach County, GA.

Edward H. Lindsey, Jr., Kathryn A. Cater, Altanta, GA, for South Carolina Insurance Company.

Michael Morgan Smith, Macon, GA, for Peach Metal Industries, Inc.

William Michael Peterson, Warner Robins, GA, for Ann H. DeGraw.

Ann H. DeGraw, Fort Valley, GA, pro se.

Thomas W. Rhodes, Edward H. Wasmuth, Jr., Atlanta, GA, for Blue Bird Body Company, Cardinal Manufacturing Company.

F. Kennedy Hall, Macon, GA, Thomas T. Terp, J. Steven Justice, Cincinnati, OH, for Allied Chemical Corporation, Thiokol Corporation.

C. Michael Johnson, Shawn M. Willette, Joyce Mocek, Atlanta, GA, for Simplex Nails.

### ORDER

OWENS, District Judge.

Before the court is the motion for summary judgment of third-party defendant Simplex Nails on third-party complaints filed by Frances M. Coody and Timothy A. McCord, as Trustees for the Irrevocable Trust of T.A. McCord, Jr. ("the Trustees"), and Turner Ashby McCord, Jr. ("McCord"). After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court issues the following order.

### I. Introduction

Plaintiff Briggs & Stratton Corporation filed the original complaint in this case seeking contribution and indemnity for environmental clean-up costs incurred by Briggs & Stratton at a site in Byron, Georgia. Third-party defendant Peach Metal Industries, Inc. ("PMI") leased the site from defendant Turner Ashby McCord, Jr., from approximately 1971 until November of 1984. During that time period PMI operated a metal plating and finishing business on the site which resulted in the generation of hazardous wastes.

Briggs & Stratton's complaint seeks, inter alia, recovery from defendants under the Comprehensive Environmental Response, Compensation and Liability Act, as amended ("CERCLA"), 42 U.S.C. § § 9607(a), 9613(f), and 9613(g), for some or all of the response costs incurred by Briggs & Stratton pursuant to EPA Administrative Order No. 91–01–C, which required remediation of the environmental contamination occurring at the PMI site.

The Trustees and McCord filed separate third-party complaints against Simplex Nails and other third-party defendants. With respect to Simplex Nails, the Trustees' third-party complaint asserts claims for arranger liability under 42 U.S.C. § 9607(a)(3) of CERCLA, continuing nuisance, and trespass/waste. McCord's third-party complaint against Simplex Nails asserts claims for CERCLA arranger liability and state law indemnification. In its motion for summary judgment on the third-party complaints, Simplex Nails denies that it arranged for the disposal of hazardous wastes as contemplated by the statute or that it is liable under any of the state law claims.

In their motions for summary judgment against Simplex Nails the Trustees and McCord have adopted by reference the arguments set forth in their responses and supplemental briefs opposing Simplex Nails' summary judgment motion. This court has previously granted the request of Simplex Nails that it not be required to file a response to these motions because they set forth no arguments which have not already been briefed.

### II. Facts

Alvin E. DeGraw, Sr., began a business of electroplating metal parts on the PMI site in the early 1970's. His son Alvin E. DeGraw, Jr., was an employee of the business beginning in 1975 and was an officer and shareholder from 1979 until the business closed in 1987. In 1971 the business was incorporated as Peach Metal Industries, Inc. Simplex Nails is a manufacturer of roofing nails or fasteners. According to its president, Sy Schlein, approximately twenty percent of the nails Simplex Nails manufactured were required by its customers to be galvanized. Simplex Nails does not electroplate or galvanize any of its own nails internally, but instead contracts for this service to be done by third parties. Simplex Nails paid PMI to apply electroplating to its nails as one of these third parties in accordance with its specifications. A certain percentage of the completed electroplated nails were rejected by Simplex Nails after the electroplating/galvanizing process was completed, and these nails were returned to PMI for reworking in accordance with Simplex Nails' specifications.

Invoices show that Simplex Nails paid PMI $145,705.95 for electroplating in the period between 1982 and 1987. In addition, the two companies conducted business at least ten years prior to those dates. Pursuant to oral contracts entered into between PMI and Simplex Nails, PMI was the party responsible for transporting the subject nails to and from the PMI site, although Simplex Nails

employees had visited the PMI site on occasion to transport nails. There were a limited number of electroplaters/galvanizers in the local area. Consequently, Simplex Nails gave most of its business to PMI. Simplex Nails had no ownership or property interest in PMI or the PMI site. In 1983, however, PMI borrowed $3,600 from Simplex Nails in order to stay in business. This amount was paid back in electroplating work for Simplex Nails.

The process of electroplating involves the creation of hazardous wastes. The affidavit of DeGraw, Jr., recites that in electroplating the nails for Simplex Nails alkaline soak cleaners were used to degrease and clean all electroplated parts and that hydrochloric acid was used to remove surface rust and scale. The materials were then processed in a zinc bath and processed with chromate. The materials were rinsed in water baths between each of the active processes, and the majority of the waste water was created in the rinse water and whatever chemicals were removed in the process. Chromium, one of the principal contaminates at the site, is contained in chromate. The rinse water at the PMI site was originally dumped onto the ground and was later disposed of in two unlined lagoons on the property.

The use and disposal of chemicals which were used in or generated by the electroplating/galvanization process were never discussed between Simplex Nails and PMI. No customers of PMI told PMI how to perform the electroplating process or how to operate the facility or instructed PMI how to dispose of the wastes created by electroplating. Simplex Nails never provided any of the hazardous substances used or generated by PMI in the electroplating/galvanizing process or used by PMI in any other manner. DeGraw, Jr., and his father made the decisions as to what chemicals PMI bought.

### III. Discussion

#### A. Summary judgment standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be entered in favor of the movant where "the pleadings, depositions, answers to interroga-tories, and admissions on file, together with the affidavits, if any, show that there is (1) no genuine issue as to any material fact and that (2) the moving party is entitled to judgment as a matter of law." See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); Irby v. Bittick, 44 F.3d 949, 953 (11th Cir.1995). Under the first element, the issue must be genuine, and the factual dispute must be material to the outcome of the litigation. Anderson, 477 U.S. at 248, 106 S.Ct. at 2510. For a question of fact to be "genuine," the party opposing summary judgment " 'must do more than simply show that there is some metaphysical doubt as to the material facts,' " Irby, 44 F.3d at 953 (quoting Matsu-shita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986))—the evidence must be of such a quality that "a reasonable jury could return a verdict for the nonmoving party.... If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 248, 249–50, 106 S.Ct. at 2510, 2511. The movant's entitlement to judgment as a matter of law is satisfied where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once a party has moved for summary judgment and properly supported its motion, the burden shifts to the nonmovant to create, through the evidentiary forms listed in FED.R.CIV.P. 56(c), genuine issues of material fact necessitating a trial. Celotex Corp., 477 U.S. at 324, 106 S.Ct. at 2553.

#### B. CERCLA claims

The Trustees and McCord seek contribution and indemnity from Simplex Nails under 42 U.S.C. § 9607(a)(3). Read in conjunction with subsection (a)(4), this section provides:

> Any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel

**570**

owned or operated by another party or entity and containing such hazardous substances, ... shall be liable for ... damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; ...

In addition, 42 U.S.C. § 9613(f) provides:

Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, ...

In their third-party complaints the Trustees and McCord allege that if they are found liable to Briggs & Stratton for damages or response costs resulting from the release of hazardous substances at the PMI site, they are entitled to contribution from Simplex Nails under the theory that Simplex Nails "arranged for" the disposal or treatment of the hazardous substances pursuant to § 9607(a)(3).

■ Whether Simplex Nails is subject to liability as an "arranger" for disposal or treatment of hazardous wastes depends upon the specific facts of this case, since Congress did not define the term "arranged for." *South Florida Water Management District v. Montalvo,* 84 F.3d 402, 406 (11th Cir.1996). Simplex Nails relies upon two leading cases from the Eighth Circuit which are instructive in defining the extent of arranger liability. In *United States v. Northeastern Pharmaceutical & Chemical Co. ("NEPACCO"),* 810 F.2d 726 (8th Cir.1986), the Court held that a plant supervisor was individually liable under § 9607(a)(3) because he had actual control over the hazardous substances, even though there was no proof of personal ownership or actual physical possession of the substances. *NEPACCO,* 810 F.2d at 743. The Court stated: "It is the authority to control the handling and disposal of hazardous substances that is critical under the statutory scheme.... [The plant supervisor] actually knew about, had immediate supervision over, and was directly responsible for arranging for the transportation and disposal of the NEPACCO plant's hazardous substances...." *Id.*

■ An alternate rationale for finding CERCLA arranger liability was found in *United States v. Aceto Agricultural Chemicals Corp.,* 872 F.2d 1373 (8th Cir.1989). In *Aceto,* the defendants sent technical grade pesticides to mix and convert into commercial grade pesticides, a process which inherently generated hazardous wastes through spills and the various stages of the conversion process. *Id.* at 1378. The *Aceto* defendants cited *NEPACCO* in support of their contention that they should escape liability because they lacked authority to control the operations of the party who had actually disposed of their hazardous substances and because they had structured the arrangement for disposal as a sale. *Aceto,* 872 F.2d at 1381. The Court found that defendants' actual ownership of the hazardous substances and of the work in process precluded their reliance upon *NEPACCO* and justified the imposition of liability under § 9607. Although *NEPACCO* upheld the imposition of CERCLA liability on those parties who possessed authority to control the disposal process even though they lacked ownership or possession, defendants were not free to contract away their obligation to control the disposal or treatment of the hazardous substances by structuring the disposal arrangements as a sale. *Aceto,* 872 F.2d at 1381–82.

The varying fact scenarios described in *NEPACCO* and *Aceto* underscore the necessity for determining CERCLA arranger liability in accordance with the facts of each case. In *Montalvo,* 84 F.3d 402, landowners in south Florida contracted with Montalvo and other sprayers to spray their property with pesticide. The Eleventh Circuit found that the landowners were not liable under § 9607 because "for the landowners to have 'arranged for' the disposal of the pesticide wastes, they must have done more than simply contracted for aerial spraying services. The Sprayers must demonstrate the Landowners took some affirmative act to dispose of the wastes." *Id.,* 84 F.3d at 407. No such affirmative act was demonstrated, because the landowners did not assist the sprayers in loading the planes or rinsing out the applicating tanks, presumably did not even know about the spills at the land site, and had neither the duty nor the authority to monitor

or control the sprayers' activities. The Court held that it could not infer knowledge by the landowners that spraying their lands with pesticides entailed spillage of pesticides and draining of contaminated rinse water and that without this knowledge the landowners could not have acquiesced to the sprayers' disposal of the wastes. *Id.* at 408–09. The Court reiterated, however, that "[w]hile factors such as a party's knowledge (or lack thereof) of the disposal, ownership of the hazardous substances, and intent are relevant to determining whether there has been an 'arrangement' for disposal, they are not necessarily determinative of liability in every case." *Id.* at 407.[1]

Simplex Nails argues that, like the landowners in *Montalvo*, it did not own or possess the hazardous substances in question as contemplated by the statute and did not have sufficient authority and control over their treatment and disposal to be deemed in constructive possession of the substances. It asserts, therefore, that is not subject to CERCLA arranger liability as a matter of law. *See United States v. Vertac Chemical Corp.*, 46 F.3d 803, 810–11 (8th Cir.1995) (finding no CERCLA liability when neither actual or constructive ownership or possession nor supplying of raw materials was present). One court has pointed out that "no court has imposed arranger liability on a party who never owned or possessed, and never had any authority to control or duty to dispose of, the hazardous materials at issue." *U.S. v. Iron Mountain Mines*, 881 F.Supp. 1432, 1451 (E.D.Cal.1995) (noting that in each case in which arranger liability was imposed on parties who did not literally own or possess the hazardous waste the liable party "either was the source of the pollution or managed its disposal by the arranger").

■ The Trustees and McCord have not demonstrated that Simplex Nails owned or possessed the chemicals used in the electro-

plating/galvanizing process or the hazardous substances generated by PMI in that process. Simplex Nails' ownership or possession was limited to the nails which it supplied to PMI for electroplating. In *Cadillac Fairview/California, Inc. v. U.S.*, 41 F.3d 562 (9th Cir.1994), which is cited by the Trustees, the court held that certain rubber companies were potentially liable under § 9607 for removal of wastes from styrene even though they did not own or possess the styrene at the time contaminants were removed from it. The court based its decision in part on the fact that the rubber companies had arranged to transfer contaminated styrene to Dow Chemical Company for completion of the process that led to the release of hazardous substances. *Id.* at 565.

Although Simplex Nails rejected a certain portion of the finished galvanized nails for not complying with their specifications, its return of the noncomplying finished products to PMI for retreatment is not alone, in the court's view, an adequate basis for a finding of arranger liability based on constructive possession of the non-complying chemical coatings during the period of time before the nails were returned to PMI for retreatment. Regardless of whether the necessity for retreatment of the nonconforming nails was the fault of PMI or of Simplex Nails, the limited period of possession of the nonconforming nails cannot be magnified into an ownership or possession of the hazardous substances attached to the nails sufficient to trigger § 9607 liability.

■ Simplex Nails also asserts that it did not exercise any control over the handling or disposal of hazardous wastes generated by PMI. In order to be held to exercise control over the disposal or treatment of hazardous substances sufficient to impose arranger liability, Simplex Nails must have taken some affirmative act to treat or dispose of such substances. *Montalvo*, 84 F.3d at 407; *Red-*

---

1. In *Florida Power & Light Company v. Allis Chalmers Corporation*, 893 F.2d 1313 (11th Cir. 1990), the Eleventh Circuit approved the Eighth Circuit's reasoning in *Aceto* while stopping short of adopting it as the law of this circuit. *Montalvo*, 84 F.3d at 408 n. 9. To the extent that Simplex Nails' knowledge in the case sub judice of the hazardous wastes inherent in electro-

plating presents a stronger argument for arranger liability than in *Montalvo* (when the landowners were not aware of the incidental by-products of spraying), its greater knowledge must be balanced against its lack of ownership of the substances used by PMI during the galvanizing process.

*wing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1506 (11th Cir.1996). In an appropriate case, the affirmative act leading to arranger liability may consist of a failure to act. *Redwing,* 94 F.3d at 1506 n. 23.

The Trustees and McCord contend that the knowledge of Sy Schlein that the electroplating/galvanizing process created hazardous substances supports a finding of arranger liability. Schlein stated that he was familiar with and knowledgeable about the electroplating process, had seen many electroplating plants throughout the country, and had talked to some of these plants about how they disposed of waste. He was aware that hazardous substances were generated by galvanizing steel. Because Schlein assumed that PMI was properly disposing of its wastes, however, he made no direct inquiry about its disposal practices.

■ The Trustees and McCord maintain that the fact that Simplex Nails profited from the sale of electroplated nails, as well as the fact that Simplex Nails had sufficient interest in PMI's continuing operation to loan it $3,600 to stay in business, demonstrate control over PMI's business. These arguments are unpersuasive. Schlein's knowledge of the electroplating/galvanizing process in general is not determinative as to his or Simplex Nails' knowledge as to PMI's actual practices of disposing of hazardous wastes. Simplex Nails' profits from its sales of the finished products treated by PMI and its loan of $3,600 to PMI establish that a mutually beneficial business relationship existed between the two companies. However, the Trustees and McCord have failed to produce persuasive authority for their position that a beneficial business relationship is sufficient in itself to establish arranger liability. There is no evidence that Simplex Nails knew that hazardous wastes inherent in the galvanization process were improperly disposed of, that it had any authority to control PMI's method of treatment or disposal of such wastes, or that it actually attempted to control such treatment or disposal. Merely exercising business influence over a company does not equate to controlling that company's hazardous waste disposal methods. *See United States v. Fleet Factors Corp.,* 819 F.Supp.

1079, 1087–88 (S.D.Ga.1993) (customers, suppliers, insurers, unions, and the government are not subject to CERCLA liability solely for exercising their influence). Moreover, Schlein's failure to act to prevent the generation of hazardous substances cannot in the court's view justify a finding of liability of the sort contemplated by *Redwing* unless there was some underlying duty to act. The facts of the present case do not provide an appropriate factual scenario to imply from Schlein's inaction an affirmative act leading to arranger liability.

■ The Trustees and McCord also contend that Simplex Nails exercised control over the hazardous substances when it specified the type and class of plating it required for its nails. *United States v. Aceto Agricultural Chemicals Corp.* is cited as authority for this position. However, Simplex Nails correctly states a critical distinction between the fact situation in *Aceto* and that in the instant case. In *Aceto* it was possible to infer that the manufacturers exercised some control over the formulator's mixing process in part because the manufacturers provided specifications as to what pesticides were to be mixed by the formulators and because they retained ownership of the chemicals and pesticides throughout the formulating process. In the case sub judice, however, Simplex Nails specified only the type and class of electroplating that was to be performed in order to arrive at its desired finished product. Had Simplex Nails provided PMI the various chemicals to be used in the electroplating process, specified the manner in which the electroplating process was to be done, and/or retained control over the chemicals during the electroplating process, the reliance upon *Aceto* would be well founded. However, Simplex Nails' providing specifications to PMI as to the type of finished product it required for ultimate sale to its customers is an insufficient basis upon which to find arranger liability.

The Trustees and McCord have failed to provide convincing evidence to refute Simplex Nails' position that it neither owned or possessed nor had any authority or duty to control or dispose of the hazardous materials generated by PMI in its electroplating busi-

ness. Simplex Nails does not meet the requirements set forth in 42 U.S.C. § 9607(a)(3) for being a party who arranged for the treatment or disposal of hazardous substances. Thus, Simplex Nails is not liable for contribution under CERCLA.

### C. State law claims

In addition to their CERCLA claims, the Trustees and McCord allege that Simplex Nails is liable to them under Georgia law for continuing nuisance and trespass/waste, as well as principles of state law indemnification.

▄▄▄ In order to be held liable for maintaining a continuing nuisance or trespass, Simplex Nails must have a legal right and be under a legal duty to terminate the cause of the injuries sustained by the Trustees and McCord. *See Bodin v. Gill,* 216 Ga. 467, 117 S.E.2d 325 (1960).[2] Under Georgia law a claim of continuing trespass is subsumed within a nuisance claim. *State of Georgia v. City of East Ridge, Tennessee,* 949 F.Supp. 1571, 1584 (N.D.Ga.1996); *Brand v. Montega Corp.,* 233 Ga. 32, 209 S.E.2d 581, 582 (1974). The Trustees and McCord have not shown that Simplex Nails had a legal duty to involve itself in PMI's handling of hazardous substances. Its involvement with PMI was limited to placing orders with PMI for electroplating/galvanizing nails to be sold to its customers, and it had no direct knowledge of PMI's handling or disposal of hazardous substances which were a by-product of the process. No authority is cited to suggest that Simplex Nails had a duty to inquire as to PMI's disposal practices, and no showing is made that it had actually received notice of the practices. In addition, the Trustees and McCord have not overcome Simplex Nails' assertion that it had no legal right to enter on the PMI site to correct PMI's hazardous waste disposal activities. Thus, the nuisance/continuing trespass claims must fail.

---

**2.** *Bodin* was relied on by the court in the unpublished case of *The Corporation of Mercer University v. National Gypsum Company,* 1986 WL 12447 (M.D.Ga. March 9, 1986). The *Mercer* court cited additional authority for the principle that an element of a continuing nuisance claim in Georgia is a legal right to abate the nuisance. *See, e.g., City Council of Augusta v. Lombard,* 101 Ga.

The Trustees and McCord also assert state law indemnification claims for the negligence of PMI. In Georgia, the elements of a cause of action for negligence include the following:

(1) A legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm;

(2) A breach of this standard;

(3) A legally attributable causal connection between the conduct and the resulting injury; and,

(4) Some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty.

*Brown v. RFC Mgmt.,* 189 Ga.App. 603, 604, 376 S.E.2d 691, 692 (1988). Generally an employer is not liable for the negligence of an independent contractor; however, by statutory enactment Georgia has adopted certain exceptions to this rule pursuant to O.C.G.A. § 51-2-5, which provides in pertinent part:

An employer is liable for the negligence of a contractor:

(1) When the work is wrongful in itself or, if done in the ordinary manner would result in a nuisance;

(2) If, according to the employer's previous knowledge and experience, the work to be done is in its nature dangerous to others however carefully performed;

(3) If the wrongful act is the violation of a duty imposed by express contract upon the employer;

(4) If the wrongful act is the violation of a duty imposed by statute;

(5) If the employer retains the right to direct or control the time and manner of executing the work or interferes and assumes control so as to create the relation of master and servant or so that an injury

---

724, 727, 28 S.E. 994 (1897), and *Keener v. Addis,* 61 Ga.App. 40, 43, 5 S.E.2d 695 (1939); *see also Citizens & Southern Trust Co. v. Phillips Petroleum Co., Inc.,* 192 Ga.App. 499, 385 S.E.2d 426, 428 (1989) (a party is not guilty of an actionable nuisance unless the injury was caused by his own acts or failure of a duty to act).

results which is traceable to the interference; or

(6) If the employer ratifies the unauthorized wrong of the independent contractor.

The Trustees and McCord assert that Simplex Nails is liable under Subsections (1), (2), and (4) of this Code section and cite several cases in furtherance of their claim that disposal of hazardous wastes is either an inherently dangerous activity or that the question of whether it is inherently dangerous is a question to be submitted to a jury. Other authority has been submitted by Simplex Nails in which the courts reached the opposite result.

It is the opinion of this court that whether Simplex Nails is liable under O.C.G.A. § 51–2–5 must be determined with reference only to the activity of electroplating/galvanizing rather than to the creation of hazardous wastes. Simplex Nails did not enter into a contract with PMI for the treatment or disposal of hazardous wastes but only for electroplating services. *See Wells v. Vi–Mac, Inc.*, 226 Ga.App. 261, 486 S.E.2d 400, 401– (1997) (refusing to extend § 51–2–5 liability to service station which sold gasoline to individual injured while priming his carburetor on theory of inherent danger of priming carburetors). The court cannot accept the assertions of the Trustees and McCord that it is the galvanizing process itself which is either wrongful in itself, dangerous to others however carefully performed, or a violation of a duty imposed by statute or otherwise. Thus, § 51–2–5 does not operate to impose liability upon Simplex Nails for PMI's negligence with respect to treatment or disposal of hazardous wastes.

### IV. Conclusion

For the reasons stated hereinabove, the motion of Simplex Nails for summary judgment on the third-party complaints of Frances M. Coody and Timothy A. McCord, as Trustees for the Irrevocable Trust of T.A. McCord, Jr., and Turner Ashby McCord, Jr., will be **GRANTED**. The motions for summary judgment of the Trustees and McCord will be **DENIED** for the same reasons.